| 74 | 13 |
| 37a | 233 |
| 37a | 679 |
| 74 | 13 |
| 102 | 220 |
| 74 | 13 |
| 51a | 16 |
| 52a | 57 |
| 74 | 13 |
| 115 | 180 |
| 74 | 13 |
| 58a | 329 |
| 74 | 13 |
| 127 | 690 |
| 74 | 13 |
| 69a | 24 |
| 74 | 13 |
| 92a | 117 |
| 92a | 119 |

---

DOWLING v. GERARD B. ALLEN & Co., *Appellant.*

1. **Master and Servant**: DANGEROUS MACHINERY: YOUTH AND INEX-
PERIENCE OF SERVANT. Where a servant, engaged in operating ma-
chinery, by reason of his youth and inexperience is not aware of
the danger to which he is exposed, it is the duty of his master to
warn him if he himself knows of it, and this notwithstanding the
existence of that which renders the machinery dangerous is known
to the servant.

2. ———: VICE-PRINCIPAL. A foreman in charge of a distinct piece of
work in an extensive foundry, and having under him laborers
bound to obey his orders, is, as to them, a vice-principal to their
employer, and not their fellow-servant, and this although another

may be general foreman of the entire establishment, with authority over him.

3. **Negligence**: PLEADING. The plaintiff was not confined by the pleadings in this case to proof that defendant's machinery was defective, but was entitled to prove, as a dictinct act of negligence, the failure of defendant to warn him of the risk he ran in using it.

*Appeal from St. Louis Court of Appeals*

AFFIRMED.

*Martin & Lackland* for appellant, relied on *cGow an v. R. R. Co.*, 61 Mo. 528; *Nolan v. Shickle*, 3 Mo. App. 300; *Marshall v. Schricker*, 63 Mo. 308; *Hayden v. Smithville Man'f'g Co.*, 29 Conn. 548.

*Fisher & Rowell* for respondent, relied on *Coombs v. New Bedford C. Co.*, 102 Mass. 572; *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Whalen v. Centenary Church*, 62 Mo. 326; *Mauerman v. Siemerts*, 71 Mo. 105; *Norton v. Ittner*, 56 Mo. 351; *Wyatt v. R. R. Co.*, 55 Mo. 485; *Dowling v. Allen*, 6 Mo. App. 195; *Keegan v. Kavanaugh*, 62 Mo. 233; *Dale v. R'y Co.*, 63 Mo. 455; *Cook v. R. R. Co.*, 63 Mo. 397; *O' Flaherty v. R. R. Co.*, 45 Mo. 70; *Patterson v. R. R. Co.*, 76 Pa. St. 389; Shearm. & Redf. on Neg., p. 11, § 11; *Clarke v. Holmes*, 7 Hurlst. & N.(Exchr.) 937; *Cummings v. Collins*, 61 Mo. 520; *Steiner v. Moran*, 2 Mo. App. 47; *Stoddard v. R'y Co.*, 65 Mo. 514; *Huddleston v. Lowell M. Shops*, 106 Mass. 286.

HENRY, J.—We have adopted the statement of this case made by the court of appeals, having, from an examination of the record, found it substantially correct.

This is an action for damages for injuries done to plaintiff whilst in the employ of defendants, a corporation carrying on a foundry in St. Louis. At the close of plaintiff's case, defendants offered an instruction in the nature of a demurrer to the evidence, which was granted. Plaintiff then took a non-suit, and the court having overruled a motion to set it aside, plaintiff appeals. There was evi-

dence tending to show the following facts: Plaintiff, a boy seventeen years of age, at the request of his father, was hired by the defendant. At the time he was thus hired, he had no experience in foundry business, or with machinery, and of this fact, Fisher, the foreman and general superintendent of defendant's foundry, who hired him, was informed at the time. During the first two months of his service with defendant, plaintiff was employed in running errands and in sweeping out. During the last month he was employed in the machine-shop and in the yard, where a turntable was being constructed, under the charge of one King, a fellow-servant of the plaintiff. The foreman of defendant, who had hired plaintiff, told him to go with King and do whatever he told him, and plaintiff did so. Plaintiff's father, who was also employed in the foundry, remarked the boy one day working under King's directions at a lathe, and told King that that was dangerous work for the boy, as he was "green." To this King replied, that the boy was better and sharper than some of the men; and no more was said at the time. The boy himself told King that he did not like being employed to help him, and that King had better get some one to take his place; but King persuaded him to remain at the turntable. The turntable was inside the foundry. It was over thirty feet in diameter. Running east from this table, a little south from the center of it, was a shaft about twelve feet long and six inches in diameter. This shaft was covered, except for the space of three or three and a half feet nearest the turntable. The lower part of the shaft was about ten inches above the floor, and could be stepped over, at the place where it was not protected, and the men employed in the foundry were in the habit of stepping over it when going to and fro. At the end nearest the turntable, the shaft had a collar about an inch and a half thick, and from this collar projected a set-screw about two inches high. The plaintiff said in his direct examination: "The collar was a close fit. I don't exactly know how large the set-

screw was.    The shaft was between eight and ten inches high.    I could step over it easily enough.    The shaft revolved rapidly.    The set-screw could not be seen when the shaft was revolving.   I did not see the set-screw before I was injured," and further on he said : " I had never taken particular notice of that set-screw before I was injured." At the date of the accident, plaintiff had been working about three weeks at the turntable, with King.   King directed him to stop the engine.   This was done by pulling a string, to shut off the steam.   The engine was at the other side of the turntable.   It could be reached in two ways.   The shorter way was to cross the revolving shaft. King told the boy to hurry, and he took the shorter way. In stepping over the shaft the leg of his trousers was caught by the set-screw.   His leg was drawn under the shaft, and so badly broken as to render immediate amputation necessary to save his life.

The question presented for determination is not free from difficulty.   The principles of law on the subject of the liability of the master to the servant for injuries received by the latter in the service of the former, are reasonably well settled, and the only difficulty lies in their application to the facts of a given case.   One who enters the service of another, takes upon himself the ordinary risks of the employment.   *Smith v. St. Louis, Kansas City & Northern R'y Co.*, 69 Mo. 39; *Porter v. Hannibal & St. Joseph R. R. Co.*, 71 Mo. 66; *Coombs v. New Bedford C. Co.*, 102 Mass. 572.   On the other hand, if there are concealed dangers known to the employer, and unknown to the employe, it is the duty of the employer to notify the servant of their existence.   *Ib.*   We think the doctrine equally well settled by the authorities, that although the machinery, or that part of it complained of as especially dangerous, is visible, yet, if by reason of the youth and inexperience of the servant, he is not aware of the danger to which he is exposed in operating it, or approaching near to it, it is the duty of the master to apprise him of the danger, if known to him.

See cases above cited, and also *Grizzle v. Frost*, 3 Fost. & Finl. 622; *Clarke v. Holmes*, 7 H. & N. 937. It is not a conclusion of law from the fact that plaintiff was aware of the existence of the set-screw, and was seventeen years old, and sprightly for one of his years, that he was aware of the risk and danger of passing over the shaft while it was in motion.

In *Grizzle v. Frost, supra*, a girl sixteen years of age was employed in a dangerous service, and was injured by having her hand caught between two revolving rollers of the machinery. Cockburn, C. J., observed that: "If the owners of dangerous machinery, by their foreman, employ a young person about it, quite inexperienced in its use, either without proper directions as to its use, or with directions which are improper, and which are likely to lead to danger, of which the young person is not aware, as it is their duty to take unusual care to avert such danger, they are responsible for any injuries which may ensue from the use of such machinery." In that case the revolving rollers, and the manner in which they worked, were visible. The plaintiff was sixteen years of age, but it was not inferred as a matter of law, because she was of that age and knew of the existence of the revolving rollers, that she was also aware of the risk and danger to which they exposed her. As was observed by the same learned Chief Justice in *Clarke v. Holmes, supra:* "A servant knowing the fact may be utterly ignorant of the risks." The case of *Hayden v. Smithville Manufacturing Co.*, 29 Conn. 558, cited by respondent, is not in conflict with but sustains these views.

*Coombs v. New Bedford Cordage Co., supra*, is directly in point. It was there held that the defendant had the legal right to run its machinery without fencing or boxing, unless by so doing it exposed persons in its employment, or others who came upon its premises by procurement or invitation, to danger of which it gave no notice; but if the danger was apparent, and the plaintiff had reasonable no-

2-74

tice of the peril to which he was exposed, and, understanding it, chose to undertake the employment which exposed him, he could not recover.   On the other hand, if defendant knew, or had reason to know, the peril to which he would be exposed, and did not give him any sufficient or reasonable notice of it, and if he, without any negligence on his part, from inexperience, or reliance upon the directions given him, failed to perceive or appreciate the risk, and was injured in consequence, the defendant would be responsible.   In that case, a boy fourteen years of age, in the employment of the defendant, had his hand caught in the gearing of a machine, and injured.   The gearing was unguarded, but was in plain view.   The case was retried and again came before the supreme court of Massachusetts, and the doctrine announced by the court on the former occasion was reaffirmed in an able opinion delivered by Gray, J.   102 Mass. 595.   We think that the true rule in cases like this, was there announced, and that it is not an inference of law because plaintiff was seventeen years of age and sprightly, and the set-screw was in plain view and had been seen by him, that he was aware of the danger to which he was exposed in stepping over the shaft while it was in motion ; but that these questions, under proper instructions, should have been submitted to the jury.

Nor do we think that in this instance, King, who gave the plaintiff the order to stop the engine, was plaintiff's fellow-servant.   While it appears that Fisher was foreman of the establishment, King had charge of the construction of the turntable, and Fisher directed plaintiff to go with King and do whatever he directed.   In *McGowan v. R. R. Co.*, 61 Mo. 528 :   " There was no proof that the conductor had the superintendence or control over the men, or the work, or power to provide or replace machinery."   Here King was foreman of the hands constructing the turntable.   They were under him, and the plaintiff was expressly ordered by Fisher to do whatever King told him.   A foreman of the entire establishment, as extensive as defendant's, can-

not be everywhere present to direct the employes in their work, but must, of necessity, give orders through others, as in this instance. In *Marshall v. Schricker*, 63 Mo. 309, relied upon by appellant, it was held that: " The employer cannot be charged with negligence of one who was merely a foreman over the plaintiff, not engaged in a distinct department of the general service but in the same work with plaintiff, and not charged with any executive duties or control over plaintiff, which would constitute him the agent of the employer." Aside from the fact that King was foreman, here is the additional fact that Fisher directed plaintiff to do whatever King might order him to do, and he was in fact obeying Fisher in executing King's order. If it was negligence or recklessness to direct plaintiff to perform the work in the prosecution of which he received the injury, it was a direct consequence of an order given by Fisher, who was defendant's " *alter ego.*"

The counsel for appellant contend that plaintiff cannot recover on his petition, " because the only negligence alleged consisted in the defect of the machinery, in wanting physical guards to keep people safe from its supposed dangers." This position in untenable. The petition, it is true, alleges that : " It was the duty of defendant to have them properly and safely guarded," etc., and that this duty was neglected, but proceeds as follows: " That defendant had in its employment at the time herein mentioned, one G. L. King as superintendent of its said foundry; that plaintiff was under the general charge and control of said superintendent in performing his said duties and labors in said foundry under his said employment; that on or about the 19th day of August, 1872, the defendant, by its said servant, King, unlawfully, negligently and carelessly ordered and directed the plaintiff to stop an engine in said foundry, which was then in operation; that plaintiff proceeded to obey said order and direction, and while so doing, by reason of said wrongful conduct and carelessness of defendant, plaintiff was caught by a set-screw and collar

revolving with a certain counter-shaft which was attached to and being operated by said engine, and had his leg broken and crushed so badly that it became necessary to have it amputated, and plaintiff was badly bruised and injured in other parts of his body, so much so that his arms were paralyzed. Plaintiff states further that it was no part of his duty under his said employment to stop said engine; that it was unsafe and dangerous for one of his age to perform such work, and that it was much more dangerous than the work he was employed to do; and it was gross carelessness on the part of defendant, by its servants, to require the plaintiff to stop said engine as aforesaid. Plaintiff further states that it was the duty of defendant to have said set-screw, collar and counter-shaft, engine and machinery in said foundry well and securely guarded and covered, but neglecting its duty in this behalf, it negligently and carelessly allowed the same to remain uncovered and entirely unguarded, and carelessly and negligently operated the same in that condition. Plaintiff says that he used due diligence and care on his part while proceeding to stop said engine as aforesaid, and at the time of said injuries; and that said injuries were caused by and resulted from the said carelessness and negligence of defendant aforesaid."

It will be perceived that it alleges that King negligently and carelessly ordered and directed plaintiff to stop the engine, and that while obeying said order he was caught by a set-screw and collar revolving with a certain counter-shaft, which was attached to and being operated by said engine. This, in connection with the allegation of the dangerous nature of the machine and the youth and inexperience of plaintiff, states a cause of action, and the additional negligence alleged, with regard to the screw and collar being uncovered, does not operate to eliminate the other alleged negligence and confine plaintiff to proof that the set-screw and collar were not properly guarded. In fact, this matter of negligence is a circumstance which the

jury would have the right to consider in determining, whether, and to what extent, it was negligence or recklessness on the part of King to demand such service of the plaintiff. For the foregoing reasons we affirm the judgment of the court of appeals.