RENFRO v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Master and Servant**: RISKS ASSUMED BY SERVANT: NEGLIGENCE. A servant assumes the ordinary and natural risks incident to the service in which he engages, and the master is not liable for the servant's want of care.

2. **The evidence** in this case examined, and the accident, which resulted in the death of plaintiff's husband, who was in defendant's service, held to have been attributable to the risks incident to the business in which the deceased was engaged, coupled with the want of care on the part of himself and a fellow servant.

*Appeal from Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*M. A. Low* for appellant.

(1) The dangers to be apprehended from repairing cars on tracks used for making up trains, were open and obvious. They were as patent to Renfro as to Best, consequently all such hazards were assumed by the former. *Cagney v. Ry. Co.*, 69 Mo. 416; *Smith v. Ry. Co.*, 69 Mo. 32. (2) Having acquiesced in defendant's customary mode of doing the business, neither Renfro, nor those claiming through him, had the right to complain that it was not the proper way to do it. By acquiescing in it

he made it his way. He had no right to demand that the company should exercise more care for his safety than he exercised for himself. *Priestly v. Fowler*, 3 M. & W. 1; *I., B. & W. R. Co. v. Flanigan*, 77 Ill. 365; *Penna. Co. v. Lynch*, 90 Ill. 333; *Baylor v. Ry. Co.*, 11 Vroom, 23; *Dillon v. U. P. Ry. Co.*, 3 Dill, 319; *Hughes v. Ry. Co.*, 27 Minn. 137; *Sweeney v. Ry. Co.*, 57 Cal. 15; *Porter v. Ry. Co.*, 71 Mo. 67. (3) Best was not a superintendent. He was a mere foreman. He had power to hire and discharge car repairers. In respect to that duty he was a vice-principal; but he is not charged with any neglect of duty in employing and discharging hands. A foreman is the fellow servant of the men engaged in working under his directions. *O'Conner v. Roberts*, 120 Mass. 419; *McCosker v. Ry. Co.*, 84 N. Y. 77; *Zeigler v. Day*, 123 Mass. 152; *Holden v. Ry. Co.*, 129 Mass. 268; *Beaulieu v. Ry. Co.*, 48 Me. 291; *Gallagher v. Piper*, 16 C. B. (N. S.) 669, 694; *Wilson v. Merry*, L. R. 1 Scotch App. 326; *Howells v. Landore Steel Co.*, L. R. 10 Q. B. 62; *Brown v. Ry. Co.*, 27 Minn. 162; *Hoke v. Ry. Co.*, 11 Mo. App. 575. (4) The court erred in giving plaintiff's fourth instruction. The circumstances connected with the fatal injury should not have been considered in estimating the damages. A railway company is not liable in punitory damages in such a case. *Steinbach v. Winfrey*, — Mo. —; *Morgan v. Durfee*, 69 Mo. 469; *Porter v. H. & St. J. Ry. Co.*, 71 Mo. 66; *Cleghorn v. N. Y. C. & H. R. Ry. Co.*, 56 N. Y. 44.

*R. A. Debolt* for respondent.

(1) It was sufficient to charge that Best, the agent of defendant, ordered the deceased to repair a car in a place which he knew to be dangerous. *Mack v. Railroad*, 77 Mo. 234; *Schneider v. Railroad*, 75 Mo. 293. (2) The evidence fails to show that the danger on the occasion of the injury was any more obvious or likely to occur than on any former occasion. The deceased had been ordered

by his superior, Best, the agent of the company, to repair
the crippled car on track number two, Best knowing
the danger to which he would be subjected, and in obey-
ing he had the right to rely for his safety on the supposed
superior judgment of Best, who gave the order and con-
tinue in the work as usual. "It cannot be said" that
in so doing "he was guilty of contributory negligence
in pursuing his labor when hurt." *Flynn v. K. C., St.
Jo. & C. B. Ry. Co.*, 78 Mo. 195, 209, 210; *Ford v. Fitch-
bury Ry. Co.*, 110 Mass. 240, 255; *Lewis v. St. L. & I.
M. Ry. Co.*, 59 Mo. 495; *Conroy v. Vulcan Iron Works*,
62 Mo. 38, 39; *Keegan v. Kavanaugh*, 62 Mo. 230; *Snow
v. Housatonic Ry. Co.*, 8 Allen, 450; *Fernandes v. Sac
City Ry. Co.*, 52 Cal. 49, directly in point; also, 65 Mo.
521. (3) It is the duty of an employer to provide a safe
place for his employes while at work. *Whalen v. Cen-
tenary Church*, 62 Mo. 328; *Keegan v. Kavanaugh*, 62
Mo. 232. (4) Although the deceased may have been
guilty of negligence in working in a dangerous place
without a watch, yet, it was gross negligence on the part
of Hoke, after knowing the danger to which the deceased
had exposed himself, to permit the switchman under his
control to shove the cars in from the north, through
which the injury was caused. Hoke's negligence was
subsequent to that of deceased, and he knew of the dan-
ger of deceased a sufficient time to have avoided the
injury by simply preventing the engine and men from
going to the north end of the track. *Rains v. Railroad*,
71 Mo. 167; *Strauss v. Railroad*, 75 Mo. 185; *Isabel v.
Railroad*, 60 Mo. 482; *Maher v. Railroad*, 64 Mo. 267.
(5) Instructions numbered one and two, given for plain-
tiff, were proper. *Brothers v. Carter*, 52 Mo. 374; *Gormly
v. Vulcan Iron Works*, 61 Mo. 494; *Harper v. Railroad*,
47 Mo. 579. (6) The deceased was not a fellow servant
of Best, nor of Hoke. *McDermott v. Railroad*, 74 Mo.
13; *Hall v. Railroad*, 74 Mo. 298; *Long v. Railroad*, 65
Mo. 225; *Porter v. Railroad*, 71 Mo. 77. (7) Where a

superintendent of a defendant has entire control over the work, and the laborers engaged in it, the defendant is liable for injuries to the employes, occurring through the negligence of such superintendent. *Lewis v. St. L. & I. M. Ry. Co.*, 59 Mo. 495 ; *Whalen v. The Centenary Church of St. Louis*, 62 Mo. 326 ; *Cook v. The Han. & St. Jo. Ry. Co.*, 63 Mo. 397. (8) Before defendant can charge that deceased was negligent in not complying with defendant's rules in doing its work, it must show that he knew of such rules, and this it has failed to do. No witness testified that he knew of such rules. *A., T. & S. F. Ry. v. Plunkett*, 25 Kas. 195. (9) The question of negligence is one of fact for the jury, and was, in this case, fairly submitted to them on the instructions, and the finding, which was for the plaintiff, should not be disturbed. *Harper v. Ry. Co.*, 47 Mo. 576; *Stoddard v. Railroad*, 65 Mo. 521; *Smith v. Railroad*, 61 Mo. 591, 592 ; *Buesching v. The St. L. Gaslight Co.*, 73 Mo. 233 ; *Barton v. Railroad*, 52 Mo. 253; *Flynn v. Railroad*, 78 Mo. 211 ; *Hoyt v. Hudson*, 22 Am. Rep. 719; *Fernandes v. Sac City Ry. Co.*, 52 Cal. 49, 50, 51, 52 ; *Brown v. Railroad*, 50 Mo. 466.

BLACK, J.—The plaintiff's husband was in the employ of defendant, as car repairer, at its yards in Trenton. While thus engaged he was run over and injured, from which he died. This is a suit for damages therefor. The petition alleges that defendant's servants, having in charge repairing of cars, negligently directed Renfro to repair a car standing on track number two, and while obeying this order, defendant's servants carelessly backed, or run, a train of cars over him. Six witnesses, five of whom were car repairers, and one a fireman, all engaged, at the time, in the yards, testified in behalf of plaintiff. Their testimony is all that was offered. Whether this evidence made out a *prima facie* case is the real question for consideration.

There was a track in the yards running north and south, designated as number two. West of this, and in the western part of the yards, was a repair track. The evidence, also, shows that Best was foreman of the car repairers, and had charge of that work. Hoke was yard master, and had charge of making up trains, handling cars in the yards, and control of the switchmen. Winters and Sires, car repairers, were at work on the caboose track, when the former and deceased went from there to fix a car, the location of which is not given. They could not fix this car where it was, and they directed a switchman to set it on the repair track. Best, the foreman, then directed Winters and the deceased to repair a crippled car on track number two. They then left Best near the shops and went a hundred, or one hundred and fifty yards to the car to be repaired. It does not appear where Best was at the time of the accident.

Winters alone gives an account of what transpired at that place. It is as follows :

"I went under the car and was at work fixing it, while Renfro stood beside the car, watching. The yardmen shoved in a car on the south end of track number two. A colored boy was on the car, and some one said, 'stop it,' and he did so. Renfro then got under the crippled car with me, and we both went to work to fix it. I do not know which way the men went after shoving in the car on the south end of number two. Daniel Hoke was yard master, and was on duty at the time. We saw him from fifty to one hundred yards south of us when the car was set in on track number two. I do not know what he did, or where he went, after that. I did not see him any more until after the accident. Some time after that, some cars were shoved in from the north upon track number two, without any warning to us, and while we were still at work under the car fixing the drawhead, which was out of order. The cars ran against the car we were still at work under, and caused it to run

Renfro v. The Chicago, Rock Island & Pacific Ry. Co.

over Renfro, inflicting injuries from which he died the same day. There were ten or twelve cars coupled to, and north of that, under which we were at work at the time of the injury. We kept watch until a car was put in on south end of track. We then thought Hoke saw us, and went to work without a watch. The rules required us to flag or watch. We did not tell the yardmen we were going to work on this car. We knew Hoke saw us when the car was set in on the south end. Renfro was then standing by the car, where he could not help seeing him. I was under the car at the time. The rules required us to tell the yard master and crew when we went under the cars to repair them. We did not do so this time. Yerian was near the car which was set in from the north, and as soon as I saw the car I gave him the signal to stop, but it was too late. It was a dangerous place to work. It was the custom for us to work repairing cars in all parts of the yard. Where the repairs required were slight, cars were not set on repair track. Track number two was used for making up trains, and was in constant use. We put out no flag when we went to work under the car, and had no watch out at the time of the accident. There was but one flag in the yard at the time, and it was in use at the lower end of the yard. No flag or guard was furnished us. We did not ask Best for a flag, nor for a guard."

Another of these witnesses stated: "We had orders to put out flag, or to keep a watchman, when repairing cars off the repair track;" and another, that "there was a general order from Best that when two went out without a flag, and it took both to do the work, to call for a third man. A third man was never refused." There was other evidence to the effect that the flag was in use at the time of the accident, and that Best and Hoke each had entire control of the work and men in their respective departments.

Now, Best, in giving the order to repair the car, only

directed the deceased and Winters to do that which; was a part of their general work. This work to be done was no more hazardous than that daily performed. Reasonable rules were prescribed for the safety of the men, which were not obeyed. It is contended that there is no evidence that deceased knew of these rules, but this is clearly untenable. Express evidence is that there was a general order when two went to work and it took both to do the work, to call for a third. The witnesses all speak of these rules, and the deceased did watch so long as there was any immediate danger from the south end of the track. When the cars were put in on the south end of the track, deceased and Winters saw Hoke, who was to the south of them, and it may be fairly inferred that he saw them, for Renfro was then on watch at the side of the car. Twenty or twenty-five minutes later, the same switch engine was at work at the north end of the track, with ten or twelve cars between it and deceased, and then the accident occurred. It does not appear where Hoke was at this time, but it may be inferred that he was with the engine and its crew. Without keeping further watch, or giving notice to any one, deceased and Winters both went under the car, out of sight of the train men. If Hoke, or he and the train men are to be charged with any negligence, it is because, from the previous circumstance of seeing deceased on watch, they knew, or ought to have known, that deceased and Winters were under the car.

The train men, in the discharge of their duties, might well rely upon the customs of the yard. The disappearance of deceased, in the light of the rules and custom, would lead to the conclusion that the car repairers had left, nothing further appearing. There is no evidence to show that Hoke knew the character or extent of the work to be done on this crippled car, and from which he might reasonably infer how long it would take them to do the work.

We must hold there is no evidence to charge Hoke with negligence. On the facts disclosed, Hoke and Best are to be regarded as vice-principals, and not as fellow servants with the men under their respective management. We have assumed, for the purposes of this case, that the men engaged in the two departments were so far separated that those in the one should not be regarded as fellow servants with those in the others. Citation of authorities is not necessary to show that the servant assumes the ordinary and natural risks incident to the service in which he engages, nor is the master liable for the servant's own want of care.

Giving to the evidence in this case every intendment which it will bear in favor of the plaintiff, we are all agreed that the accident must be attributed to the risks incident to the business in which deceased was engaged, coupled with want of care on the part of himself and Winters, who was, beyond doubt, a fellow servant.

The judgment should be reversed. It is so ordered. All concur.