PAULINE REICHLA, Respondent, v. LOUIS GRUENSFELDER, Appellant.

St. Louis Court of Appeals, December 20, 1892.

1. **Action by Wife for Death of Husband:** ESTOPPEL: RELIANCE ON REPRESENTATION. Where a mother acts as next friend for her children in an action by them for the death of their father, the fact that the petition alleges that the mother has failed to sue within the period of six months, to which her right of action is limited, will not estop the mother from denying the truth of that allegation in proceedings on her part against the same defendant, if the defendant has not acted upon the allegation to his prejudice, as where there has been neither compromise of the action of the children, nor a judgment therein against the defendant.

2. **Master and Servant:** NEGLIGENCE OF MASTER: SUFFICIENCY OF THE EVIDENCE. The evidence in this cause is considered, and is *held* adequate to warrant a recovery for negligence of the master in furnishing to the servant defective appliances and insufficient accommodations and quarters for the doing of work attended by risk.

3. ——: EXTENT OF OBLIGATION OF MASTER. The obligations of the master towards his servant require him to furnish not only suitable tools and appliances and competent fellow servants, but also a reasonably safe place for the doing of the work demanded of the servant.

4. ——: OBVIOUS DEFECTS: RISKS ASSUMED BY SERVANT. When a servant is engaged in work under the orders of the master, and is injured in consequence of obvious defects in the instrumentalities furnished therefor, the master is responsible for the injury only upon proof either that the danger attending the execution of the master's orders was not fully appreciated by the servant owing to the want of time for consideration, or that the increased danger by reason of the defective agencies was not so imminent and threatening as to require the servant to abandon the service.

5. ——: OBLIGATION OF MASTER TO FENCE DANGEROUS MACHINERY. Even in the absence of a statutory provision for the fencing of dangerous machinery the obligation, which the law imposes upon the owner of the premises to guard persons lawfully there against pitfalls, may be applied between a master and his servant, and a failure to comply therewith may under the circumstances of particular cases warrant the inference of negligence.

6. ——: ——: EFFECT OF GENERAL PRACTICE. When such fencing can be resorted to without inconvenience, and its absence renders the machinery unnecessarily dangerous, the existence of a practice to use the machinery without it will not prevent the inference of negligence.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*C. P. & J. D. Johnson,* for appellant.

(1) The trial court erred in sustaining the demurrer to that portion of the answer which pleaded an estoppel. Revised Statutes, secs. 1997, 2000, 2003, 4425–4427; Bigelow on Estoppel, pp. 553, 697, note 3; *Chilton v. Scruggs,* 5 Lea, 316; *Hilton v. Zimmermann,* 5 Sneed, 40; *Bank v. Warrington,* 40 Iowa, 528; *Crout v. Tremble,* 66 Ill. 428; *McEwin v. Jenks,* 6 Lea, 291; *Cooley v. State,* 2 Head, 606; *Cheney v. Selma,* 71 Ga. 384; *Anderson v. Clark,* 70 Ga. 367. (2) The court

below erred in not giving the defendant's instruction for a nonsuit offered at the close of the evidence for plaintiff, and in refusing to give the same instruction when offered after all the evidence was in. Wood's Law of Master & Servant [2 Ed.] secs. 326, 335, 372, 382, pp. 675, 682, 758; *Renfro v. Railroad*, 86 Mo. 302; *Price v. Railroad*, 77 Mo. 508; *Porter v. Railroad*, 71 Mo. 66; *Keegan v. Kavanaugh*, 62 Mo. 256; *Aldridge v. Midland*, 78 Mo. 559; *Cummings v. Collins*, 61 Mo. 520; *Lewis v. Railroad*, 59 Mo. 495; *Covey v. Railroad*, 86 Mo. 635; *Lela v. Railroad*, 82 Mo. 430; *Nolan v. Shickle*, 3 Mo. App. 300. (3) The instruction given by the court below, on its own motion, is erroneous, in that it was not supported by the evidence; it submitted to the jury issues which there was no evidence to sustain; it submitted to the jury a question of law; it ignored the evidence tending to show that the alleged defects in the instrumentalities, around and with which deceased worked and which occasioned his death, were open to the most casual observation, and that it did not require any skill or unusual intelligence to see or learn of the same; it contained abstract propositions of law; it erroneously submitted to the jury the question of contributory negligence upon the part of the deceased; it assumed that the deceased was inexperienced and was assigned to a duty for which he was unfitted, and which involved unreasonable risks. *Duke v. Railroad*, 99 Mo. 351; *Music v. Railroad*, 57 Mo. 134; *White v. Chancy*, 20 Mo. App. 397; *Cottrell v. Spiess*, 23 Mo. App. 35; Whitaker's Smith on Negligence, 40; *Albert v. Besel*, 88 Mo. 150; *Jordan v. City*, 87 Mo. 673; *Railroad v. Cleary*, 77 Mo. 628; *Hudson v. Railroad*, 53 Mo. 539; *Bank v. Westlake*, 21 Mo. App. 365; *Beauchamp v. Higgins*, 20 Mo. App. 514; *Hoffmann v. Parry*, 23 Mo. App. 20; *Rigdon v. Trumbo*, 52 Mo. 35; *Budd v. Hoffheimer*, 52 Mo. 297; *Porter v. Harrington*,

52 Mo. 524; *Wyatt v. Railroad*, 62 Mo. 411; *Matthews v. Railroad*, 26 Mo. 89; *Wilkerson v. Thompson*, 82 Mo. 317.

*Dodge & Mulvihill* and *Leonard Wilcox*, for respondent.

(1) There was no error in the action of the court in sustaining the demurrer to the part of the answer of the appellant. The doctrine of estoppel does not apply to this case. Plaintiff had a cause of action for the negligent killing of her husband, and, having once appropriated it by filing suit within six months, all others were forever barred from so doing. Revised Statutes, 1889, secs. 4425, 4426, 4427; *McNamara v. Slavens*, 76 Mo. 331; *Shepherd v. Railroad*, 3 Mo. App. 550; *Tate v. Jacobs*, 47 Mo. App. 218. (2) The defense of contributory negligence was not properly pleaded by appellant, and his instructions founded on that defense were properly refused. No question of contributory negligence can arise until there is evidence of defendant's negligence. *Fugler v. Bothe*, 43 Mo. App. 51–58; *Young v. Shickle*, 103 Mo. 324–328; Whitaker's Smith on Negligence, 374; *Gurley v. Railroad*, 93 Mo. 445–50; *Shortel v. St. Joseph*, 104 Mo. 114–120; *Schultz v. Moon*, 33 Mo. App. 329. (3) There was ample proof of each of the six acts of negligence submitted to the jury, and the question being one of fact is not reviewable by this court. *Bishop v. Hunt*, 24 Mo. App. 373. (4) Unless the court can say as a matter of law that the appellant, although he may have been guilty of the acts charged, exercised such care as a man of ordinary prudence would exercise under the same circumstances, the case was properly submitted to the jury; but the court cannot say this, because, to say the least, it is a question about which reasonable minds may differ.

*Norton v. Ittner,* 56 Mo. 351; *Staples v. Canton,* 69 Mo. 592; *Loewer v. Sedalia,* 77 Mo. 431–444; *Whalen v. Church,* 62 Mo. 326; *Schultz v. Moon,* 33 Mo. App. 329–340; *Buesching v. Gas Co.,* 73 Mo. 219–230; *Soeder v. Railroad,* 100 Mo. 673; *Hudson v. Railroad,* 32 Mo. App. 667–676; *Walsh v. Railroad,* 102 Mo. 582–587; *Witting v. Railroad,* 101 Mo. 631–641; *Campbell v. Eveleth,* 83 Me. 50; 21 Atl. Rep. 784; *McElligott v. Randolph,* 22 Atl. Rep. 1094; *Railroad v. McDade,* 10 Sup. Ct. Rep. 1044; *Reagan v. Railroad,* 93 Mo. 348–352; *McCarragher v. Rogers,* 120 N. Y. 526; *Indermaur v. Dames,* 1 Thompson on Negligence, 295; *Hays v. Gallagher,* 72 Pa. St. 136; *Railroad v. Stout,* 17 Wall. 657–663; *Williams v. Railroad,* L. R. 9 Ex. 157; *Flynn v. Bridge Co.,* 42 Mo. App. 529. (5) This is a complete answer to defendant's point that the court should have told the jury what facts, if proved, amounted to negligence. In this case, negligence . was a mixed question of law and fact, and the court having told the jury that the defendant was bound to use ordinary care left it to the jury to say what was ordinary care. *Kane v. Railroad,* 128 U. S. 91; *Campbell v. Eveleth,* 83 Me. 50; 21 Atl. Rep. 784; *Guthrie v. Railroad,* 81 Me. 572–579; *Nugent v. Railroad,* 81 Me. 62–70; *Jones v. Railroad,* 128 U. S. 443; *Drain v. Railroad,* 86 Mo. 574; *Clay v. Railroad,* 24 Mo. App. 39–47; *Tabler v. Railroad,* 93 Mo. 79–86.

BIGGS, J.—The plaintiff's husband, while employed by the defendant and while engaged in the performance of a duty assigned to him, received personal injuries which caused his death. The plaintiff, as his widow, sues for damages under section 4426 of the Revised Statutes, 1889, alleging that the injuries received by her husband were caused by the wrongful act or neglect of the defendant. The defendant is and was . at the

times hereinafter stated a pork packer doing business in the city of St. Louis. On the thirteenth day of May, 1889, he hired the deceased to wash and scrub the tank room, which is connected with his pork-packing establment. Three days after the deceased went to work, he was scalded in the tank room, from the effects of which he died on the following day. No one saw the accident, and just how it happened and what caused it can only be determined by the circumstances in evidence. The tank room is about twenty-four feet long, and ten or twelve feet wide. In the room are three tanks, used in rendering lard. The material out of which the lard is rendered is put into the tanks from the second story of the building. Steam is applied, and, when the rendering process is completed, the lard is first drawn off, leaving water, dirt and other materials at the bottom of the tanks. The water, which is impregnated with more or less grease, is then drawn off into a box, located on the lower floor beside the tanks. This box is about fifteen feet long, three feet wide and about two feet deep. In order to remove the refuse matter from a tank, it is necessary to remove what is called the "manhole," which is fastened to the tank by means of a bolt and nut. To remove the nut, a large wrench is used. There is also a sliding platform about three feet long and about two feet wide, which is made to fit on top of the hot water box. This platform, according to the weight of the defendant's evidence, was only used by the tank men in cleaning out the tanks, but, according to the plaintiff's evidence and that of one of defendant's witnesses, it was also used to stand on in unscrewing the nut and removing the "manhole."

The plaintiff in her petition charged the defendant with the following acts of negligence: *First.* Allowing the floor and the platform to become wet, slippery

and greasy.  *Second.*  Allowing the box of hot water to remain open and exposed without a suitable rail or guard.  *Third.*  Allowing the platform to remain without rail or guard.  *Fourth.*  Permitting the tank room to be insufficiently lighted.  *Fifth.*  Furnishing unsuitable and defective wrenches to remove the nut. *Sixth.*  Ordering the deceased, who was a common laborer, to open one of the tanks.  The plaintiff also averred in her petition that, within six months after the death of the deceased, she instituted a suit under the statute, and, that on the twenty-third day of January, 1890, she took a nonsuit.  The present action was begun on the thirteenth day of May, 1890.

In addition to the general denial, the answer contained the following:  "And, for his further answer, defendant states that the. death of the said John Reichla was occasioned by his own negligence, and not by any negligence on the part of the defendant."  As a further defense it was alleged that, on the twenty-fourth day of February, 1890, the plaintiff, as the next friend of the minor children of the deceased, instituted a suit in the circuit court of the city of St. Louis, and that the plaintiffs averred in their petition that the widow of the deceased had failed to sue for damages within six months after the death of the deceased, and that by reason of such failure a right of action for damages for the death of the father had, under the provisions of the statute, been vested in them.  Wherefore, it was alleged by the defendant that the plaintiff was now estopped from alleging that she, as widow, *had* instituted such a suit within six months after the death of her husband, and that she afterwards took a nonsuit in said cause.  This portion of the answer was, on motion of the plaintiff, stricken out.  The cause was then tried, and the jury under the instructions of

the court returned a verdict against the defendant for $1,225. The defendant has appealed.

That portion of the defendant's answer, which set forth the alleged estoppel, was properly stricken out. The averments in the petition filed by the minor children, although the plaintiff appeared as next friend, cannot operate as an estoppel against her in this suit, for the reason that the defendant did not act thereon to his prejudice. If he had compromised the suit with the children, or if the suit had been prosecuted to a final judgment against him, then the plaintiff would have been clearly estopped. *Newcomb v. Jones*, 37 Mo. App. 475; *Wilburn v. Railroad*, 48 Mo. App. 224. Therefore, the facts stated in that portion of the answer could under no view be material, because, if in point of fact the plaintiff *did* institute a suit within six months after the death of her husband, under the authority of *McNamara v. Slavens*, 76 Mo. 329, the right of the children to sue was forever gone. If she did not so sue, then she must fail in the present action, regardless of what was done or said by her in the suit of the children.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the defendant asked the court to declare that, under the law and the evidence, there could be no recovery. The instruction was refused, and this action of the court is assigned for error.

The plaintiff's evidence tended to prove that the deceased was hired by the defendant to clean up in the tank room; that, on the third day after his employment, the man whose business it was to attend to the tanks being sick, the defendant ordered the deceased to take off the "manhole" of one of the tanks, which was outside of the line of duty of the deceased; that, upon receiving the order, the deceased went into the tank-

room, and, within ten or fifteen minutes, he rushed out and called upon some of his fellow-workmen to take off his clothes; that his clothing was stripped off and he was found to be badly scalded on the head, face, neck, hands, arms, and some parts of the upper portion of the body; that he was removed to the hospital and died on the next day. . The plaintiff also introduced evidence tending to prove that the tank room had but one opening, and that it afforded but little light; that it was so dark in the room at the time the deceased was injured, that work about the tanks and hot water box could not be done with safety; that there was a gas jet in the room, but that it was not lighted; that the floor in front of the box and the platform was wet and greasy; that the hot water box and platform were not guarded; that the wrenches which were used to unscrew the nut, so as to open the "manhole," were insufficient; that a monkey wrench which was sometimes used for that purpose was too small; that the larger wrench had been so worn by use that it was too large for the nut; that both wrenches had been used by the defendant for some time; that the defendant had admitted that the deceased had used a wrench which was insufficient; that, to do the work which the deceased was ordered to do, required skill, or at least some knowledge of the mode and manner of doing it, which the deceased did not possess. The plaintiff also introduced the files and record to show that, within six months after the death, she instituted her suit, and that she submitted to a nonsuit therein in January, 1890

The plaintiff's evidence touching the alleged failures of duty by the defendant was sufficient to take the case to the jury under proper instructions, unless the whole evidence leaves the cause of the accident a matter of mere conjecture or surmise, and not of legal inference. If the proof is sufficient to make the inference

admissible, that the deceased lost his life in attempting to carry out the orders of the defendant, and that the accident resulted from any one of the alleged acts of negligence, then the demurrer to the evidence was properly overruled. It must be presumed, there being no evidence to the contrary, that the deceased was exercising due care at the time he received the injuries. *Buesching v. Gas Co.*, 73 Mo. 219. As no one saw the accident, the cause contributing to it must be determined, if at all, by the circumstances and physical facts established by the evidence. Now it must be conceded, for it is the only reasonable inference, that the deceased fell into the hot water box. There was no other place in the tank room, where he could possibly have received his injuries. Under the plaintiff's evidence the fair inference is that the accident occurred while the deceased was attempting to carry out the orders of the master. This made a case for the jury, if it was reasonable to suppose from the evidence that the deceased would not have lost his life, but for some one of the alleged negligent acts of the defendant. The deceased might have fallen into the box by reason of an insufficient light in the tank room; or he might have slipped or fallen on account of the grease which had been allowed to accumulate on the floor in front of the box, or he might have slipped off the platform into the box while attempting to open the tank; or the accident might have been brought about by the wrench slipping off the nut, or by slipping over it onto the bolt, as the evidence showed it possible to do, thereby causing the deceased to lose his balance and fall into the box. The character of the injuries tend to prove that he fell head first, as his lower extremities were not even wet, showing that he must have gotten into the box in one of the ways suggested, as the evidence fails to show that there was anything over which he might

have stumbled. The further inference may be fairly drawn that, whatever may have produced the accident, if the box had been sufficiently guarded, the deceased would in all reasonable probability have escaped injury. Therefore, the legal inference is admissible, that the deceased was injured by reason of some one of the alleged acts of negligence, and we conclude that the court did right in overruling the demurrer to the evidence.

The defendant complains of the instructions. It will only be necessary to notice those given. The court charged the jury as follows: "In this action the plaintiff seeks to recover damages for the death of her husband, which she alleges was caused by the negligence of the defendant.

"The alleged acts of the defendant, which the plaintiff alleges were acts of negligence, are:

"*First.* Allowing the platform mentioned in evidence to be wet, slippery and greasy.

"*Second.* Allowing the box of hot water mentioned in the evidence to remain open and exposed without a suitable rail or guard.

"*Third.* Allowing the platform to remain without rail or guard.

"*Fourth.* Permitting the place, where the tanks and hot water box were, to be insufficiently lighted to enable one to observe the condition of the premises and appliances, and to safely do the work, which the plaintiff alleges that her husband was ordered to do.

"*Fifth.* Furnishing unsuitable and defective wrenches to do the work mentioned, of which plaintiff alleges there were two, a monkey wrench which was out of repair, rusty, too small, and could not be turned or used on the tank, and another wrench that was defective, worn out, too large for the nut which it was used to turn, and unfit for that use.

"*Sixth.* Ordering plaintiff's husband, who was a common laborer, to work around the hot water box in question, in the insufficiently lighted place, and to open the tank.

"It is for you to decide from the evidence in this case whether or not the defendant did, or permitted, the acts and conditions above specified, or either of them, and, if so, whether or not such was negligence.

"The law does not require an employer of men to furnish them tools, and implements and conditions, that are absolutely safe, but it does require of him to exercise that degree of care that a man of ordinary common sense and prudence engaged in like business would exercise, to see that the tools and appliances and conditions furnished by him are reasonably safe and suited for the business; and, in the assignment of tasks and duties to his employes, he should exercise a like degree of care and prudence to see that inexperienced men are not assigned to duties for which they are unfitted, and which involve unreasonable risks.

"If, in respect of the above-enumerated alleged acts of the defendant, he did exercise the degree of care above mentioned, he was not guilty of negligence; if he failed to exercise that degree of care, then he was guilty of negligence within the meaning of that term as used in these instructions.

"And, on the other hand, the employe who enters into a service, takes upon himself the risk of hazard, if any, that naturally belongs to that kind of service, and he is required, in the performance of his duties, to exercise that degree of care and prudence to avoid injury to himself, which a man of ordinary common sense and prudence engaged in that kind of business would exercise; and a failure on his part to exercise that degree of care and prudence in that connection is what is meant by the term negligence, as used in these

instructions in reference to the acts of the plaintiff's deceased husband.

"Unless you believe from the evidence that the defendant did or permitted the above-mentioned acts or conditions alleged as negligence, or either of them, you must find for the defendant.

"And if you believe from the evidence that he did, or permitted said enumerated acts or conditions, or either of them, it will then be your duty to decide under the evidence whether or not such act or condition was negligence on his part, within the meaning of that term as above defined; and, if you find that the same was not negligence within that definition, then your verdict should be for the defendant.

"But, if you find from the evidence that the defendant was guilty of negligence in respect of said alleged acts or conditions, or either of them, then it will be your duty to decide under the evidence whether or not that negligence caused the death of the plaintiff's husband, and, unless you find from the evidence that that negligence did cause said death, your verdict must be for the defendant; and, if you find from the evidence that the defendant was guilty of negligence in respect of said alleged acts or conditions, or either of them, and that that negligence contributed to cause said death, it will be your duty to decide under the evidence whether or not the plaintiff's husband was himself guilty of negligence in the premises, which also contributed to cause his death, and, if you decide that question in the affirmative, your verdict must be for the defendant.

"But, if you believe from the evidence that the defendant was guilty of negligence, within the definition above given, in respect of said alleged acts or conditions, or either of them, and that that negligence caused the death of the plaintiff's husband, and that he was, at

the time, doing or attempting to do what he was ordered by the defendant to do, and was exercising that degree of care and prudence that a man of ordinary common sense and prudence, in like situation, would have exercised, then your verdict must be for the plaintiff.''

At the instance of the plaintiff the court also instructed the jury: ''1. If the jury believe that any witness has wilfully testified falsely to any material fact in this case, then you may disregard the whole, or any part, of the testimony of said witness.''

''2. If the jury find for the plaintiff, you may, in your verdict, give her such damages, not exceeding $5,000, as you may deem fair and just, under the evidence in the case, with reference to the necessary injury resulting to the plaintiff from the death of her husband.''

On the part of the defendant the jury were further instructed: ''The jurors are also instructed that, if they should believe and find from the evidence that the deceased received the injuries complained of by reason of defects in any one of the wrenches mentioned in evidence, while using the same for the purpose of opening the manhole of the rendering tank, also mentioned in evidence, still plaintiff is not entitled to recover, if they further believe and find that the defendant, immediately prior to the accident to the deceased, directed deceased not to attempt to open the said manhole in defendant's absence.

''2. The jurors are also instructed that, if they should believe and find from the evidence that the defendant offered to pay something to the plaintiff in settlement of the previous case brought by her against him, and heretofore tried in circuit court room 2, that fact does not constitute evidence of an admission, upon defendant's part, of any liability for the damages

sought to be recovered in this action, and they should disregard it."

The court's charge to the jury cannot be sustained. In order to a proper understanding of the subject, it will be necessary to refer to some elementary principles which govern master and servant in their relations as such. It is the law, recognized everywhere, that the master must furnish suitable and reasonably safe instrumentalities with which to accomplish the work assigned to the servant. This not only requires suitable tools and appliances, and competent fellow-servants, but also that the place where the work is to be carried on must be reasonably safe. This latter duty is not only enjoined by the law governing master and servant, but it is also imposed upon the master, as the owner of the premises, by the general law for the protection of all persons lawfully there. *Dayharsh v. Railroad,* 103 Mo. 570; *Hannibal & St. J. Ry. Co. v. Fox,* 31 Kan. 586; *Siela v. Railroad,* 82 Mo. 430; *Covey v. Railroad,* 86 Mo. 635; *Hickman v. Railroad,* 22 Mo. App. 345; *Sullivan v. Mfg. Co.,* 113 Mass. 396; *Coombs v. Cordage Co.,* 102 Mass. 572; *Dowling v. Allen,* 74 Mo. 13; *Gibson v. Railroad,* 46 Mo. 163. On the other hand, the servant by his contract of employment assumes all of the usual and ordinary hazards of the business. *Renfro v. Railroad,* 86 Mo. 302; Wood's Law of Master & Servant, sec. 382. In an action by the servant against the master for personal injuries, received while about the latter's business, it devolves upon the servant to prove that the master failed in some legal duty which he owed to him. If he complains of defects in the instrumentalities of the business, he must show, either that the defects complained of were not obvious, and were unknown to him, but that the master had knowledge thereof, or might have had by ordinary inspection *(Keegan v. Kavanaugh,* 62 Mo. 230); or, if

the defects were obvious, that the danger was not fully appreciated by him for want of time for consideration (*Cummings v. Collins*, 61 Mo. 520; *McDermott v. Railroad*, 87 Mo. 287); or that the increased danger was not so imminent and threatening as to require him to abandon the service. *Conroy v. Iron Works*, 62 Mo. 35; *Stoddard v. Railroad*, 65 Mo. 514; *Thorpe v. Railroad*, 89 Mo. 650; *Devlin v. Railroad*, 87 Mo. 545; *Huhn v. Railroad*, 92 Mo. 440; *Stephens v. Railroad*, 96 Mo. 207; *Soeder v. Railroad*, 100 Mo. 673; *Fugler v. Bothe*, 43 Mo. App. 44.

Now in the case at bar the defects complained of, with the exception, perhaps, of the alleged defective condition of the wrench, were obvious, and it is quite plain that the court in its charge failed to place the right of recovery under proper legal restrictions and qualifications. The conduct of the deceased in accepting and continuing in the service with knowledge of the alleged defects, strictly speaking, does not present a question of contributory negligence on his part, which, to be available to the defendant, must have been pleaded; but the effect of such conduct, without a further showing by the plaintiff, was to free the defendant from any negligence of which plaintiff had a right to complain. *Flynn v. Bridge Co.*, 42 Mo. App. 529. Therefore, it was a part of the plaintiff's case to show to the satisfaction of the jury either that the deceased, for want of time for consideration, did not fully appreciate the risk attending the execution of defendant's order, or that the increased danger by reason of defective agencies did not threaten immediate injury.

In view of a new trial, there is another matter which we ought to notice. It is insisted by defendant that it was not negligence on his part to use the hot water box and platform without a guard. At the time of the accident we had no statute requiring any kind of dan-

gerous machinery to be fenced (Session Acts, 1891, sec. 3, p. 160), but the obligation, which the general law imposes upon the owner of premises to guard persons lawfully there against pitfalls, may be applied between master and servant, and a failure to comply with this legal duty might, under the circumstances in a given case, authorize a legal inference of negligence on the part of the master. This view we think is fully sustained by the authorities. *Indermaur v. Dames*, L. R. 1 C. P. 274; *Paterson v. Wallace*, 1 Paterson, 389; *Watling v. Oastler*, L. R. 6 Exch. 74; *Sullivan v. Mfg. Co.*, 113 Mass. 396; *Coombs v. Cordage Co.*, 102 Mass. 572; *Dowling v. Allen*, 74 Mo. 13; *Ryan v. Fowler*, 24 N. Y. 410; Wood's Law of Master & Servant, sec. 334; *Noyer v. Smith*, 28 Vt. 59. But it is further insisted that the defendant was only compelled to keep his place in like condition as other places of business of the same character, and that, as the evidence tended to show, "there being no evidence to the contrary," that the owners of like establishments do not fence the hot water boxes used by them, no negligence could be imputed to defendant for failing to do so. The same argument was advanced in the English court of common pleas, in the case of *Indermaur v. Dames, supra.* In answer to the argument, WILLES, J., who delivered the opinion of the court, said: "It is ably insisted for defendant that he could only be bound to keep his place of business in the same condition as other places of business of the like kind, according to the best known mode of construction. And this argument seems to be conclusive to prove that there was no absolute duty to prevent danger, but only a duty to make the place as little dangerous as such a place could reasonably be, having regard to the contrivances necessarily used in carrying on the business. But we think this argument is inapplicable to the facts of this case: *First*, because it

was not shown, and probably could not be, that there was any usage never to fence shafts; *secondly*, because it was proved that, when the shaft was not in use, a fence might be resorted to without inconvenience; *and no usage could establish that what was in fact unnecessarily dangerous was in law reasonably safe, as against persons towards whom there was a duty to be careful.*"

The position here taken is not in conflict with our decision in the case of *Fugler v. Bothe, supra.* In that case the liability of the defendant was not made to rest on the faulty construction of the appliance, but upon the fact that the appliance furnished for doing the work was unusual and extra hazardous.

In view of a retrial, we have deemed it proper to call attention to the fact that the case of *Fugler v. Bothe, supra,* has been certified to the supreme court, and will in all probability be determined before a retrial of the present action can be had. Whatever may. be the decision of the supreme court in that case, it will be the duty of the circuit court to retry the present case in conformity thereto. *Hamilton v. Ins. Co.,* 35 Mo..App. 263.

For the error in the instruction the judgment of the circuit court will be reversed, and the cause remanded. Judge THOMPSON concurs in the opinion as written; Judge ROMBAUER in the result.