MARVIN DIMMITT, Respondent, v. THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, April 29, 1890.

1. **Practice, Appellate :** REVIEWING FINDING OF DAMAGES. In an action for personal injuries, the policy of the law is to leave the determination of the damages, under proper instructions, to the judgment of the individual jurors, and not to interfere, unless it is manifest that the verdict was the result of passion or prejudice. And *held*, in the case at bar, that there was no such warrant for interference, though the damages allowed seemed large and rather out of proportion to the injuries received, the verdict being two thousand dollars, and the injuries consisting of a bad sprain of the ankle and a rupture or great sprain of the ligaments in the ankle joint.

2. **Railroads :** NEGLIGENCE: ACTION OF INJURED PERSON INDUCED BY DANGER. If a passenger on a railroad car, which has been derailed by the negligence of the railroad company and is in danger of overturning, jumps from the car, while in motion, in order to escape peril, and receives injuries in so doing, it is no defense to his action for such injuries to say that he was unnecessarily alarmed, and that he would have escaped injury, if he had remained on the car.

3. —— : —— : BURDEN OF PROOF. In a suit for such injuries the plaintiff establishes a *prima facie* case by proof that he was a passenger on the railroad car and that he received the injuries complained of in consequence of the derailment of the car; the

burden of proof is then upon the railroad company to show that there were no acts of negligence, either of omission or commission, by any of its servants contributing to the accident, and that the derailment of the car was occasioned by inevitable casualty which the utmost skill and diligence could not have prevented, or by the act of a stranger which it, the railroad company, could not have foreseen or anticipated.

4. ———— : ———— : ACTS OF STRANGERS. If a duty or service obligatory upon a servant of a railway company be negligently performed by a stranger, the railway company is responsible for damages occasioned to passengers on one of its trains through such negligence, if the stranger performed such duty or service at the request or with the assent of such servant, or in the presence of, and without objection on the part of, such servant.

5. Instructions: ASSUMPTION OF FACTS: NON-PREJUDICIAL ERROR. *Held,* that the assumption of matters of fact in instructions in this case was no ground for the reversal of the judgment, because these matters were affirmatively established by the evidence of the appellant.

*Appeal from the Shelby Circuit Court.*—HON. THOS. H. BACON, Judge.

AFFIRMED.

*Strong & Mosman,* for the appellant.

(1) The defendant's demurrer to the case made by the evidence for the plaintiff should have been sustained. (2) Unless Kincaid's "act can be legally attributable to the company, it is clear the company was not the cause of the injury. The maxim, *qui facit per alium facit per se,* can only apply where there is an authority, either general or special. It is natural justice that one man should not be held liable for the act of another, without his participation, his privity or his authority." *Flower v. Railroad,* 69 Pa. St. 210, cited approvingly in *Snyder v. Railroad,* 60 Mo. 418; *McGuire v. Grant,* 25 N. J. L. 371; *Yates v. Squires,* 19 Ia. 26. (3) Even had the evidence gone so far as to show that Kincaid was directed by the brakeman to get

off and turn the switch, the defendant would not be liable. Such direction would not have been within the scope of the employment of the brakeman. The evidence shows that he had no such power or authority. *Hudson v. Railroad*, 16 Kas. 474; *Sherman v. Railroad*, 72 Mo. 65-66; *Stringer v. Railroad*, 96 Mo. 302; *Snyder v. Railroad*, 60 Mo. 413; *Jewett v. Railroad*, 55 N. H. 84; *Whitehead v. Railroad*, 22 Mo. App. 621. (4) The defendant was guilty of contributory negligence. *Reary v. Railroad*, 40 La. 32; *Railroad v. Felton*, 125 Ill. 458; *Railroad v. Wallen*, 65 Tex. 568. (5) The damages were excessive.

*R. P. Giles, W. O. L. Jewett*, for the respondent.

The damages were not excessive. Appellant seeks to escape by saying that the negligence in question was not that of its servant, but of a stranger. Kincaid was no stranger. He had been doing the company's work at Shelbina. He was returning from Brookfield, where he had been by his own confession on business for the appellant. *Prima facie* a person found doing a service for another is the other's employe. *Perry v. Ford*, 17 Mo. App. 212-220; 2 Thompson on Neg. 893, 899. The respondent, having shown that he was injured in consequence of the negligent throwing of the appellant's switch while a passenger on appellant's train, thereby made a *prima facie* case in its behalf. Hence it would have been error for the court to sustain the demurrer to the evidence. *Coudy v. Railroad*, 85 Mo. 84; *Hipsley v. Railroad*, 88 Mo. 348; *Lemon v. Chanslor*, 68 Mo. 341; Shear. & Redf. on Neg., sec. 280; *Edgerton v. Railroad*, 39 N. Y. 227; *Young v. Kinney*, 28 Ga. 111; *Fairchild v. Stage Co.*, 13 Cal. 599.

BIGGS, J., delivered the opinion of the court.

On the seventh day of September, A. D. 1888, the plaintiff was a passenger on one of defendant's trains

from Clarence to Shelbina. At or near the railroad station at Shelbina, the car or caboose in which the plaintiff was riding was derailed, and the plaintiff, in jumping from the car after it had left the track, sprained his ankle; he has brought this action to recover damages for the injury thus received.

The plaintiff in his petition charged that the accident to the train was brought about through the negligence of the defendant's servants, having it in charge, and the negligence, thus imputed to the defendant, was predicated on the following facts, as stated in the petition, to-wit: "Plaintiff states that the defendant was guilty of negligence and carelessness in this, that while plaintiff was such passenger in said caboose car on said train, and before it reached the station at said city of Shelbina, and while it was approaching said station, and while the said train and caboose car were in motion and being run onto a sidetrack of defendant's, and after the locomotive, freight cars and front trucks of the caboose car had passed onto the sidetrack, the rear trucks of the caboose car being still on the main track, the defendant, its servants and employes carelessly and negligently caused the switch on defendant's railroad to be thrown and closed, thereby causing the rear trucks of the caboose car to be violently thrown off the track, and on to the ends of the ties and between the rails of said railroad, causing said caboose car to bound from tie to tie and from side to side; and the defendant, its servants and employes then and there carelessly and negligently failed to stop said train, and then and there so carelessly and negligently ran and managed said train, and so carelessly and negligently continued to move the same at a great rate of speed," etc. The petition concluded with the statement that the injuries received by plaintiff in escaping from the car were permanent, and that he had been damaged in the sum of five thousand dollars.

The defendant's answer, after tendering the general issue, interposed the defense of contributory negligence.

The jury returned a verdict in plaintiff's favor for two thousand dollars, and a final judgment was entered thereon. The defendant has appealed from this judgment, and claims that it is erroneous and cannot be sustained for the following reasons : *First.* The damages are excessive. *Second.* The undisputed facts show that the plaintiff's own negligence contributed directly to the injuries received. *Third.* The court erred in admitting illegal evidence and in giving improper, and refusing proper, instructions. *Fourth.* The evidence failed to show that the accident was caused by the negligence of the defendant's servants.

I.   The damages allowed by the jury seem to us to be large and rather out of proportion to the injuries received. The difficulty, however, in dealing with such question is, that there is no rule of law by which appellate courts can be guided in determining what sum ought to be awarded in personal injury cases. The policy of the law is to leave the determination of such matters, under proper instructions, to the judgment of the individual jurors, and in no case can the court interfere, unless it is manifest that the verdict, on account of the amount of damages awarded, was the result of passion or prejudice. In the present case four physicians testified concerning the plaintiff's injuries. They all agreed that the ankle was badly sprained, and that the ligaments in the angle joint had either been ruptured or greatly sprained. The plaintiff's evidence in respect of the permanency of the injury was as follows : Doctor Priest testified : "It would get better, but at the same time it would not be a sound limb. I do not think it would ever be good." Dr. Wainright testified : "Well, the chances are against a permanent recovery, for this reason, that the joint at the place would not be put at rest long enough until a complete recovery could take place, and, if it was put at rest long enough, it would

be a stiff joint. For this reason injuries of this kind
never fully recover." In addition to this it was dis-
closed by the evidence that the plaintiff was, at the date
of the trial, compelled to support his ankle with a
metallic brace, and when the brace was removed his
ankle would give way. The defendant introduced no
countervailing proof. In view of the foregoing evidence
we would not be warranted in holding that the verdict
was the result of passion or prejudice, and we will,
therefore, rule this assignment against the defendant.

II. The question of contributory negligence was
submitted to the jury under proper instructions, and
the issue was found against the defendant. We are of
opinion that the finding is amply supported by the evi-
dence. It was shown that the plaintiff was sitting in
the car when the derailment occurred ; that the car,
after it left the rails, was not detached from the train,
but went bouncing over the ties at the rate of eight or
ten miles an hour ; that the indications were that it
would be completely overturned, and that, while the
car was thus in motion, the defendant ran to the rear
door of the caboose and jumped off. If the plaintiff
was placed in this perilous position through the negli-
gence of the defendant's servants, it would be a strange
doctrine indeed, if defendant could escape liability by
showing that the plaintiff, in attempting to escape from
the car, failed to exercise ordinary prudence. The
plaintiff had a right to act on appearances, and it is no
answer to his suit to say that he was unnecessarily
alarmed, and if he had remained on the car he would
not have been hurt. *Siegrist v. Arnot*, 86 Mo. 200 ;
*Eldridge v. Railroad*, 1 Sand. Sup. 89 ; *Railroad v.
Aspell*, 23 Pa. St. 147 ; *Buel v. Railroad*, 31 N. Y. 314 ;
Hutchinson, Carriers, sec. 534. We will have to rule
this assignment likewise against the defendant.

III. The other assignments may be considered
together. It is urged by the defendant that the evi-
dence failed to show that the accident was brought

about through the negligence of the defendant's servants, and that its instruction to find for the defendant ought to have been given. It is conceded that the plaintiff was a passenger on the defendant's train, and the evidence leaves the cause of the accident in no doubt. The car was derailed in the following manner: When the train arrived at Shelbina, the switch was turned so as to run the train on a sidetrack. The caboose or passenger car was attached to the rear end of the train, and after the front trucks of the caboose had left the main track, but before the rear trucks had reached the sidetrack, one Walter Kincaid negligently threw the switch back, thereby throwing the car from the rails. The evidence introduced by the plaintiff had some tendency to show that Kincaid was in the defendant's service, and was engaged in the capacity of a brakeman on the train.

When the plaintiff showed that he was a passenger on the defendant's train, and that he received the injuries in consequence of the derailment of the car in which he was riding, a *prima facie* case for him was made out, and the burden of proof was then with the defendant to show to the satisfaction of the jury that there were no acts of negligence, either of omission or commission, by any of its servants, contributing to the accident, and that the derailment of the car was occasioned by inevitable casualty, which the utmost skill and diligence could not have prevented, or by the act of a stranger, which the defendant could not have foreseen or anticipated. *Higgins v. Railroad*, 36 Mo. 418; *Lemon v. Chanslor*, 68 Mo. 340; *Coudy v. Railroad*, 85 Mo. 79; *Hipsley v. Railroad*, 88 Mo. 348.

Whether the defendant's evidence was sufficient to rebut plaintiff's *prima facie* case was for the jury in the first instance, and not the court. If the court had directed a verdict for the defendant, it would have been an absolute invasion of the province of the jury. *Hipsley v. Railroad, supra.* The better practice is not to

direct a verdict for the parties sustaining the burden of proof in any contested case, and, if the jurors abuse their right to pass on the credibility of witnesses and the weight of their evidence, it is the duty of the trial judge to correct the wrong by granting a new trial. But this discussion is not of much importance, because, under the view which we have taken of defendant's liability under the undisputed facts, the finding of the jury was for the right party. We, therefore, conclude that the trial court did right in refusing to direct the jury that the plaintiff could not recover.

It is next urged that the verdict and judgment are contrary to the evidence and instructions. The court instructed in substance that the plaintiff could not recover, unless the car was derailed by reason of negligence on the part of defendant's servants or employes. This view of the case was presented to the jury by all the instructions. The argument is now made that there was no substantial evidence tending to show that Kincaid, who negligently threw back the switch, was a servant of the defendant. The evidence satisfies us that Kincaid was not in the defendant's service, and that his acts and conduct, concerning the operation of the train on which the plaintiff was a passenger, were voluntary. But it does not necessarily follow from this that the defendant ought not to be held liable for the consequences of the accident. The rule is that one man cannot be held liable for the tortious acts of another, without his participation, privity or authority. *Snyder v. Railroad*, 60 Mo. 413. Therefore, if the negligent act of Kincaid cannot be legally attributed to the defendant, the judgment in this case is wrong and must be reversed. The determination of the question necessitates a reference to the testimony in the case. It was shown by the plaintiff's evidence that Kincaid was on the train from Clarence to Shelbina; that he got off at stations and helped the other railroad men to load and unload freight; that he set brakes on the cars,

662    40 MISSOURI APPEAL REPORTS,

and that the train men made no objection. That portion of Kincaid's testimony bearing directly on the cause of the accident was as follows :

"Q.  Who learned you to throw switches?  A.  I hadn't been learned at that time.

"Q.  How did you happen to do it that time? A.  I just walked on off the platform, and when I got out I got off and threw the switch.

"Q.  Did the brakeman allow you to do that? Did he made any objection?  A.  As I walked out of the caboose, the brakeman was standing on the platform of the caboose, and when I got near the switch stand he walked down by me, and I says to him that I would throw the switch for him.

"Q.  Did you tell him before you passed him or after you passed him?  A.  I told him as I passed him.

"Q.  Did he try to stop you?  A.  He didn't have time.

"Q.  Could he not have taken hold of you?  A.  He might have taken hold of me.

"Q.  He didn't force you not to?  He was right by you, and he did not force you not to?  A.  No, sir."

Elmer C. Flopper was the brakeman whose duty it was to throw the switch.  He testified as follows :

"When he (Kincaid) stepped off the car I was standing on the platform on the front end of the way car.

"Q.  Did not Kincaid then tell you that he was going to throw the switch?  A.  Yes.

"Q.  Did you make any objection?  A.  No."

The principles of law governing the liability of a carrier to its passengers has been laid down by the supreme court as follows:  "It has been accordingly held that passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight can go ; that is for the utmost care and diligence of very cautious persons, and of course they are responsible for any, even the

slightest, neglect.   *   *   *   For the law will, in tender-
ness to human life and limbs, hold the proprietors liable
for the slightest negligence, and will compel them, by
satisfactory proofs, to repel every imputation thereof."
*Lemon v. Chanslor*, 68 Mo. 340.   The legal obligation
thus imposed on the carrier to look to the safety of his
passengers necessarily requires of him the utmost care
in the selection of safe and suitable vehicles, and the
employment of competent and skilled servants to con-
duct the business.   The law not only contemplates the
employment of competent servants, but it exacts the
performance, *by the servants themselves*, of all duties
imposed.   If such a duty is performed by a third person,
either at the request of the servant or with his mere
assent, if it is done in his presence and without objec-
tion by him, the act must be regarded as that of the
servant himself, and if it be negligently done, and an
injury should result to a passenger on account of it, the
carrier ought to be held liable.   It is the duty of the
servant in such employment to *prevent officious inter-
meddling* with his duties, when known to him.   The
fact that he did not request the intruder to perform the
service ought not to excuse the master.   To rule differ-
ently would in effect abrogate the rule governing the
carrier's liability.   Therefore, from the defendant's own
evidence, we must conclude that the act of Kincaid in
throwing the switch was the act of Flopper, the brake-
man, and as it was negligently done, and caused the
accident, the defendant must be held responsible for the
resulting injuries.   *Eaton v. Railroad*, 11 Allen, 500 ;
Hutchinson, Carriers, secs. 513, 527 and 535.

It was suggested in the argument that the view
taken by us was not directly presented to the jury by the
instructions ; that, whether Flopper knew that Kincaid
intended to throw the switch or whether he could have
prevented the action of Kincaid in intermeddling with
his duties as brakeman, were questions of fact, and
ought to have been passed upon by the jury.   All of

this may be conceded, and yet it would not be proper for us to reverse the judgment and remand the cause, because the defendant's own evidence establishes the affirmative of these issues.

The foregoing discussion disposes of all other assignments adversely to the defendant and necessarily leads to an affirmance of the judgment. The judgment of the circuit court will therefore be affirmed. Judge THOMPSON concurs in this opinion. Judge ROMBAUER concurs in the result.