ISADORE ZELLARS, by Guardian, Respondent, v. MIS- SOURI WATER & LIGHT COMPANY, Appellant.

Kansas City Court of Appeals, January 20, 1902.*

| 92 | 107 |
| 93 | ⁹674 |
| 92 | 107 |
| 102 | ²671 |

1. **Trial Practice:** TWO COUNTS: VERDICT. Where one cause of action is stated in two separate counts and one of them is good the judgment will not be arrested.

2. **Master and Servant:** WORKING PLACE: DUTY OF MASTER: CARE. The master must not only furnish the servant a reasonably safe place in which to work, but he must see that such place is kept in such condition and use reasonable care to keep himself in- formed of the condition of the place.

3. ———: ASSUMPTION OF RISK: DUTY OF MASTER. The ser- vant does not assume extraordinary risk but only such risks in

*Received too late to be placed in chronological order.

respect to the place of work as are obvious or known to him, and is entitled to all the information the master possesses touching the dangers of his service not patent to observation; and it is held on the evidence that the plaintiff did not assume the risk resulting from working over a pit of hot water, the existence of which was unknown to him.

4. ———: ASSUMPTION OF RISK: KNOWLEDGE OF DEFECT: VICE-PRINCIPAL. A servant does not assume the risk for defects he may not ascertain by exercise of ordinary care; and where an engineer, whom a fireman was instructed to obey, knows of the defect in the cover of the hot-water pit orders the fireman to repair a pump when in order to do so he must stand on the defective cover, such engineer represents the master as his *alter ego* who will be responsible for injuries arising from the engineer's negligence in failing to warn the fireman of the dangerous condition of the cover.

5. ———: PLACE OF WORKING: NEGLIGENCE: JURY QUESTION: TRIAL AND APPELLATE PRACTICE. When the facts are disputed and different conclusions may be drawn, the question of negligence should go to the jury, and a reviewing court will not interfere though the weight of evidence appears to be against the verdict since the trial court only says whether the verdict was the result of passion, etc.

6. ———: ———: INSTRUCTION: ANSWER: EVIDENCE. An instruction relating to the liability of a master for injury resulting to the servant from a dangerous working place, is held too narrow in that it does not submit to the jury whether the master knew of the defect or could have known by the exercise of ordinary care; and it is further held that the vice of the instruction is not cured by the defendant's answer admitting such knowledge; but it is further held, on motion for rehearing, that the vice of the instruction was not reversible error as all the evidence admitted the defendant's knowledge of the dangerous condition of the place of work.

7. Trial and Appellate Practice: DIFFERENT COUNTS: ELECTION. Though at a conclusion of plaintiff's evidence the trial court might have properly required the plaintiff to elect on which count of his petition he would go to the jury, refusal to do so is not prejudicial.

8. Damages: EXCESSIVE: SCALDED LEG. A verdict for four thousand dollars for severe scalding of a boy's leg is held not excessive.

Zellars v. Missouri Water & Light Co.

9. **Master and Servant:** VICE-PRINCIPAL: FELLOW-SERVANT: ASSUMPTION OF RISK. The master is an absolute insurer of the servant's safety from any negligent act of his own and the servant never assumes any risk for the negligence of the master or his deputy; and though that deputy be a fellow-servant in all other regards, he can not be such as to the personal duties of the master.

10. ——: ——: ——: ——. In defendant's engine room there were two shifts of workmen, each consisting of an engineer and a fireman. It was the duty of each shift to keep the place in repair during the period such shift was in charge. The cover of a hot-water pit was being repaired by one shift as it went off duty. They notified the engineer of the succeeding shift but neither they nor he notified his fireman who was hurt by reason of the unfinished repairs. *Held,* the first shift as to the repairs were the deputies of the defendant to perform his duty and their negligence was his negligence.

11. ——: SAFE PLACE TO WORK: MATERIALS FURNISHED: CONSTRUCTION: MASTER'S DUTY. The exception of the master's liability for an unsafe working place to the effect that if he employed competent workmen and furnished suitable material he is not liable to one servant for the negligence of another, has no application to the facts of this case since a master's duty can not be shifted onto an employee so that the former may escape responsibility.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*Trimble & Braley, John A. Eaton* and *W. R. Thurmond* for appellant.

(1) The negligence charged in the petition was not proven, and no negligence of the defendant was shown; therefore, the demurrers to the evidence as to each count of the petition should have been sustained, and the peremptory instructions offered by the defendant, at the close of all of the evidence, should have been given. (2) This court has recently stated the rule as to when the trial court should sustain a de-

murrer to the evidence. Hamman v. Central Coal & Coke Company, 156 Mo. 243; Buckley v. Kansas City, 156 Mo. 20; Baustian v. Young, 152 Mo. 325; Badgley v. St. Louis, 149 Mo. 122; Carvin v. St. Louis, 151 Mo. 334; Burnes v. Railroad, 129 Mo. 41; Bowen v. Railroad, 95 Mo. 277; Kelley v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485; Armour v. Hahn, 111 U. S. 313; Peschel v. Railroad, 62 Wis. 338; Beasley v. Linehan Transfer Co., 148 Mo. 421; Goodrich v. Railroad, 152 Mo. 231. (3) The duty to inspect and repair, resting upon the master, does not extend to such defects or conditions already known to the servant. Shea v. Railroad, 76 Mo. App. 29; Wray v. Electric Light Co., 68 Mo. App. 380; Epperson v. Tel. Co., 155 Mo. 385. (4) Instruction No. 2 authorized the plaintiff to recover because of the existence of the reservoir or water pit with hot water in it, regardless of the fact as to whether the defendant had actual knowledge of the defect in the plank or covering, and regardless of the fact as to whether sufficient time had elapsed for charging the defendant with such knowledge, and regardless of the fact as to whether the defect had existed for such length of time before the accident, that the defendant could have ascertained the defect by the use of ordinary care, and repaired it. Such an instruction, because of some or all of the above omissions, has been frequently condemned. Buckley v. Kansas City, 156 Mo. 16; Roe v. Kansas City, 100 Mo. 190; Carvin v. St. Louis, 151 Mo. 334; Fisher v. Central Land Co., 156 Mo. 479; Glover v. K. C. Bolt & Nut Co., 153 Mo. 327. (5) Extended discussion of the question of fellow-servants and any extended citation of authorities in this court, would be out of place. Under the facts of this case, the engineer, Cunningham, the engineer, Parker, and the firemen, Zellars and Gaines, were all fellow-servants. Grattis v. Railroad, 153 Mo. 380; Glover v. Bolt Co., 153 Mo. 327; Brown v. Hershey Land Co., 65 Mo. App. 162; Dutzi v. Geisel, 23 Mo. App. 676: Railroad v. Solman, 11 Kans. 83; Dow v. Railroad, 8 Kans.

642; Musick v. Dold Packing Co., 58 Mo. App. 322; Fugler v. Bothe, 117 Mo. 475; Keegan v. Kavanaugh, 62 Mo. 230; Sullivan v. Railroad, 97 Mo. 113; Condon v. Railroad, 78 Mo. 567; Hall v. Railroad, 74 Mo. 298.   (6)   Where the petition contains several causes of action stated in separate counts, if one of the counts be bad for insufficiency in statement, a general verdict will not be sustained.   Christal v. Craig, 80 Mo. 371; Byington v. Railroad, 147 Mo. 673; Scott v. Robards, 67 Mo. 292; Fuchs v. St. Louis, 133 Mo. 199.   (7)   The verdict is excessive.   The plaintiff was only confined to his bed three weeks or a month, and to the house three months.   The cuticle was burned from his leg, it is true, but the skin was burned through only in places, and the leg at the time of the trial was covered over with a thick tissue of skin.   The injured leg at the time of the trial was somewhat smaller than the other, but the physicians stated that this was due more to its non-use, and that it would fill out and had filled out a great deal since the physician last saw it.   The plaintiff up to the trial and subsequent to the injury, had been working on a farm, and had been hunting several times.   Haynes v. Trenton, 108 Mo. 123.

*J. L. Minnis* for respondent.

(1)   Appellant had knowledge of the existence of the pit. It was not necessary, in order to make it liable, that it had knowledge of the defective condition of the plank.   (2)   It was the duty of appellant to furnish respondent at all times a reasonably safe place in which to perform the services he was directed to perform.   Doyle v. Railroad, 140 Mo. 1; Herdler v. Buck Stove & Range Co., 136 Mo. 3.   (3)   The respondent assumed only such risks from the place as were obvious or known to him.   Porter v. Railroad, 71 Mo. 66; Herdler v. Buck Stove & Range Co., supra.   (4)   The pit was not obvious, but was latent and could not have been discovered by the exercise of ordinary care, and its existence was not known

to respondent, hence, the law will not imply from the contract of employment that he assumed any risk or hazard whatever that might result from the pit.   2 Thompson on Negligence, p. 979; Wood's Law of Master and Servant (1 Ed.), sec. 326, pp. 678 to 685; Holloran v. Union Iron Foundry Co., 133 Mo. 470; 2 Thompson on Negligence, p. 970.   (5)   If the servant is injured by an agency concerning which he assumed no risk, the master is liable.   Wood's Law of Master and Servant (1 Ed.), p. 730, sec. 359; 2 Thompson on Negligence, p. 979, sec. 9; Paulmeier v. Railroad, 34 N. J. L. 551; Cannon v. The Protos, 48 Fed. 919.   (6)   As appellant knew of the pit, but failed to inform respondent of it, its duty was absolute, to protect respondent from injury therefrom.   Wood on Master and Servants, sec. 349, p. 714; Wood's Law of Master and Servant, sec. 351, at bottom of page 718, and top of page 719; Sunney v. Halt, 15 Fed. Rep. 880; Anthony v. Leeret, 105 N. Y. 591; Sherman and Redfield on the Law of Negligence (4 Ed.), sec. 203; Baily's Personal Injuries Relating to Master and Servant, sec. 2664.   (7)   Respondent did not assume the risks resulting from the negligence of fellow-servants in connection with the pit.   Railroad v. Fort, 17 Wall. 554; Herdler v. Buck Stove and Range Co., 136 Mo. 3, l. c. 17.   (8)   Under the law and conceded facts appellant had knowledge of the condition of the plank, and it was not, therefore, in any event, necessary to submit that question to the jury.   Dowling v. Allen, 74 Mo. 13; Sullivan v. Railroad, 107 Mo. 66; Hall v. St. Joseph Water Co., 48 Mo. App. 356, and authorities there cited; Dayharsh v. Railroad, 103 Mo. 570.   (9)   Under the conceded facts, Cunningham, Parker and Gaines, as a matter of law, were vice-principals.   McKinney on Fellow Servants (1 Ed.), p. 58, and following pages; Coontz v. Railroad, 121 Mo. 652; Rodney v. Railroad, 127 Mo. 676, and cases cited. Wood's Law of Master and Servant (1 Ed.), p. 763; Lewis, Admr., v. Railroad, 59 Mo. 495; Huth v. Dohle, 76 Mo. App. 671; Henry v. Railroad, 109 Mo. 488; McKinney on Fellow-

Zellars v. Missouri Water & Light Co.

Servants (1 Ed.), p. 53, sec. 23; Moore v. Railroad, 85 Mo. 588; Porter v. Railroad, 71 Mo. 66; Covey v. Railroad, 86 Mo. 635; Ford v. Railroad, 110 Mass. 240.    (10)    The duty to keep the premises safe was not a duty the servants owed each other as such, but it was a duty the master owed to all the servants.    Crispin v. Babbitt, 81 N. Y. 516; Flike v. Railroad, 53 N. Y. 549.    (11)    The petition contained but one cause of action stated in two counts and it was therefore proper to overrule appellant's motion to elect.    Each count stated a cause of action, however, the judgment would be sustained if there was one good count.    Terry v. Railroad, 89 Mo. 586.    (12)    The verdict is not excessive.    Buck v. Railroad, 108 Mo. 179.

SMITH, P. J.—This is an action by plaintiff to recover damages for personal injuries occasioned by the negligence of the defendant.    The defendant, a corporation organized under the laws of this State, was the owner and engaged in operating an electric and water plant at the city of Carrollton.    About five months previous to the thirteenth day of February, 1898, the plaintiff had been employed by defendant at its electric and water plant, by which employment it was made his duty to act as fireman and to repair and assist in repairing and keeping in order the boilers, pumps and other machinery in use at defendant's said plant.

The petition contained two counts, in the second of which, it was, amongst other things alleged, "that at all of said times the planks of said floor immediately over and covering said reservoir or water pit near said pump, were very old, and defendant negligently suffered same to become rotten and unsafe, so that they did not have sufficient strength to hold weight of plaintiff; which facts were known by defendant or could have been known and discovered by defendant had it exercised ordinary care to have discovered the same, but

Vol 92 app—8

were not known by plaintiff and could not have been discovered with exercise of due care and caution by him, but that defendant with full knowledge of all the facts hereinbefore stated, negligently failed and refused to inform plaintiff of the existence of said reservoir or water pit full of boiling hot water and grease as aforesaid, and of the rotten and unsafe condition of said planks immediately over the same, and on the day last aforesaid negligently ordered the plaintiff to go upon said plank and floor and assist in repairing said last-named pump. That plaintiff, while acting under the orders of defendant and in the scope of plaintiff's employment, entered upon said plank floor near said pump, immediately over and above said reservoir or water pit full of boiling water and grease as aforesaid, and while discharging said duties in repairing said pump and while in the exercise of due care and caution, the plaintiff's left foot and leg broke through one of said planks near said last-named pump, and immediately over said reservoir of water, full of boiling water and grease as aforesaid, and went into said boiling water and grease up to plaintiff's left knee, thereby scalding and burning said left foot and leg, from which plaintiff suffered and is still suffering great bodily and mental pain," etc.

There was a trial to a jury resulting in a general verdict for plaintiff for four thousand dollars and upon which, judgment was accordingly rendered. The defendant appealed.

I. The defendant by a motion in arrest assails the judgment on the ground that the said first count of plaintiff's petition does not state a cause of action. It is conceded that the said second count does. The cause of action was the injury complained. Sackewitz v. American Biscuit Mfg. Co., 78 Mo. App. 144. It is not and can not be disputed that the cause of action stated in the second count, and that stated or attempted to be stated in the first, are identical—for the same injury. The rule is that where the same cause of action is stated in two or more counts and one of such counts is good,

the judgment must stand.   Terry v. Railway, 89 Mo. 586; Clemens v. Collins, 14 Mo. 604; Brownell v. Railway, 47 Mo. 239; Brady v. Connelly, 52 Mo. 19; Lancaster v. Insurance Co., 92 Mo. 460; Burbridge v. Cable Co., 36 Mo. App. 669; Long Bros. v. Armsby Co., 43 Mo. App. 253.   It is of no importance whether the first count states a cause of action or not.

II.   The defendant complains of the action of the court in refusing its instructions in the nature of a demurrer to the evidence.   While the evidence adduced by the plaintiff, in many material respects, was at variance with that of the defendant, it tended to prove that the defendant's power plant was located in a large two-story building which was divided by a partition wall into two rooms, one of which contained the boilers, pumps, etc., and the other the electrical machinery, etc.   The boiler extended from the partition wall to within a few feet of the east wall of the room.   About six feet south of the north wall of the building, and about ten feet east of the partition, was located a pump resting on a brick foundation about one foot high; west of the pump was a brick wall about eight feet high, extending to the partition wall, thereby making a sort of a hallway between such brick wall and the north wall of the building, about six feet wide and six feet long, and through which persons necessarily passed in going from one room to the other.   There was a plank floor in the hallway which extended therefrom into the east room about four feet to the east end of the foundation on which the pump rested.   The remaining part of the floor of the east room was covered with cinders.   Under the plank floor so extending into said room was a pit about four feet wide and six feet long and four feet deep, which was used to receive discharged steam and which usually contained very hot water.   The planks composing the cover of the pit were black and dirty.   Water escaped and came upon the floor and steam sometimes escaped through the cover of the pit.   There was a pipe on the east side of the pit through which water seeped.

The plaintiff was not informed of the existence of the pit by any one. It appears further from the plaintiff's evidence that Mr. White, the superintendent at the time he employed the plaintiff, advised him that his duties were to fire and do what the chief engineer told him to do. At the time of the plaintiff's injury, Mr. Pilgrim was superintendent, Mr. Cunningham was chief engineer, and Mr. Parker was second engineer, and plaintiff and Gaines, the firemen. The two engineers were in charge of the plant and had authority to direct the firemen.

The shift of the engineer Parker and fireman Gaines, the day the plaintiff was injured, ended at noon, and they were then succeeded by engineer Cunningham and plaintiff. Shortly before this shift, engineer Parker removed the boards from over the pit for the purpose of cleaning out the overflow pipe, when he observed one of the plank so removed was split, but the split had not gone to the extent of separating the plank into two pieces. The split extended diagonally across the east side of the south end of the plank which adjoined the foundation on which the pump rested. Parker put the cover in its place leaving the pieces of this split plank still connected. Engineer Cunningham arrived to relieve Parker, while the latter was replacing the boards over the pit. While fireman Gaines was about to repair the broken board, engineer Cunningham directed him not to do so, saying that he would have the plaintiff make the repairs. Fireman Gaines testified that he had disconnected the plank, when directed by engineer Cunningham to go away and let the work alone.

It does not appear whether engineer Cunningham replaced the piece of the plank or not, but it may perhaps be inferred that he did, as the plaintiff and another witness testified that they noticed no hole in the cover, such as the absence of the smaller piece of the plank would have made in it. It is not disputed that the plank was broken or split the day before the happening of the injury. It may be fairly inferred

from the facts disclosed that the plank in its split condition had been replaced just before the injury. Engineer Cunningham, with knowledge of the condition of the plank in the cover of the pit, directed the plaintiff to go upon the cover and assist in repairing the pump. The plaintiff had seen a small hole at the place where the split plank adjoined the pump foundation, but which was not large enough to admit his foot, He testified that he was not aware of the split condition of the plank nor of the existence of the pit under it. While the plaintiff was standing on the plank engaged in driving the plunger of the pump with a sledgehammer, his foot went through it into the pit of boiling water beneath, up to his knee; in consequence of which, he was scalded from his foot to his knee, and received severe and permanent injuries.

The law to the effect that it is the duty of an employer to furnish the employee at all times a reasonably safe place in which to do the work required of him, has been asserted and applied in a great variety of cases in this State, among which may be cited: Porter v. Railroad, 71 Mo. 66; Nichols v. Glass Co., 126 Mo. 55; Herdler v. Stove & Range Co., 136 Mo. 3; Helfenstein v. Medart, 136 Mo. 595; Bender v. Railway, 137 Mo. 240; Doyle v. Railroad, 140 Mo. 1. This duty is not only enjoined by the law governing employer and employee, but it is also imposed upon the employer as owner of the premises by the general law for the protection of all persons lawfully thereon. Reichla v. Gruensfelder, 52 Mo. App. 43; Musick v. Packing Co., 58 Mo. App. 323; Dayharsh v. Railway, 103 Mo. 570; Siela v. Railway, 82 Mo. 430; Covey v. Railway, 86 Mo. 635; Dowling v. Allen, 74 Mo. 13; Gibson v. Railway, 46 Mo. 163. This obligation which the general law imposes upon the owner of premises to guard persons lawfully there against pitfalls may be applied between employer and employee, and a failure to comply with it under the circumstances in a given case authorizes a legal inference of negligence on the part of the employer. Dowling v. Allen, ante;

Musick v. Packing Co., ante; Ryan v. Irolin, 24 N. Y. 410. The duty of the employer, according to the cases already cited, is not only to furnish the employee a reasonably safe place in which to work, but, to see that such place is kept in that condition. If the former does not know of the unsafety of such place, and reasonable care would have disclosed it, then he is liable for injuries thereby occasioned to the latter, though not actually known to him.

When one enters the service of another, he assumes all the ordinary risks arising within the scope of that employment but he does not incur extraordinary risks. Wood on Master and Ser., sec. 382; Refro v. Railroad, ante. He assumes only such risks in respect to the place as are obvious or known to him. Porter v. Railway, 71 Mo. 66; Herdler v. Stove & Range Co., ante. And an employee is entitled to all the information the employer possesses touching the dangers of the employment, not open and patent to his observation. Wood's Law of Master and Ser., sec. 351; Sherman & Redfields' Law Negl. (4 Ed.), sec. 203.

Viewing the evidence of the plaintiff in the light of the foregoing authorities, and we can not say that the plaintiff failed to establish a prima facie case entitling him to go to the jury. If the existence and location of the hot-water pit was not obvious or known to plaintiff, and was not discoverable by the exercise of ordinary care as the evidence of the plaintiff tended to show, the law did not imply from the contract of employment that he assumed the risk that might result from working over or about the pit. 2 Thompson on Negl., p. 979. While it doubtless was his duty to repair and keep the power plant in a safe condition, such duty did not require any precaution or care on his part in respect to the pit, the existence of which was unknown to him. The plaintiff took the risk of the obvious and known dangers of the employment, but he did not take that of those hidden and unknown and against

which it was the duty of the defendant to protect him, either by warning him of their existence or by removing them.

If the plaintiff did not know of the existence and character of the pit and could not have discovered the same by the exercise of ordinary care, no duty was cast upon him to repair the defect in its cover.  If the two engineers and the fireman Gaines knew of the defect in one of the planks composing the cover, and had undertaken to repair the same, then their knowledge was that of the defendant.   And the engineer Cunningham who directed the plaintiff to stand on the pit-cover and handle the sledgehammer while engaged in repairing the pump was a vice-principal, the defendant itself (Dowling v. Allen, ante; Sullivan v. Railway, 107 Mo. 66; Dayharsh v. Railway, 103 Mo. 570; Hall v. Water Co., 48 Mo. App. 356), for as has been previously stated the plaintiff was told at the time of his employment that it was one of his duties to do whatever he was ordered to do by the chief engineer.   And though the defendant was apprised of the defective and dangerous condition of the pit-cover it was not disclosed to the plaintiff.   If it was negligence or recklessness, without warning him of the existence of the hot-water pit or the defective condition of its cover, to order the plaintiff to do the work, in the prosecution of which he received the injury, it was the direct consequence of the order given by Cunningham who represented the defendant as vice-principal.

The law is that when one person employs another to perform a duty which he would have to discharge if such other were not employed to do it for him, such other as to that service stands in the employer's stead with relation to other persons and thus acts in the dual capacity of representative of the employer and as fellow-employee.   Moore v. Railway, 85 Mo. 588; Hoke v. Railway, 88 Mo. 360; Huth v. Dohle, 76 Mo. App. 671.   It is clear that if the plaintiff's evidence is to be given credence, the defendant knew that the pit-cover was defective and unsafe, and while in that condition it

ordered the plaintiff to take his place upon it and there perform certain work on the pump without giving him any notice of its defective and unsafe condition, which was entirely unknown to him. How can it be said, in the face of the evidence tending to prove these facts, that the defendant did not neglect its duty to plaintiff in failing to provide him a reasonably safe place in which to work and in withholding from him its knowledge of the defective and unsafe condition of the pit-cover on which it ordered him to stand while doing the work required of him?

While as has been already intimated, the evidence was conflicting, still we think the case is one for the jury, since it is the well-settled rule of practice in this jurisdiction that when the facts are disputed and are such that different conclusions may be drawn therefrom, or, where they admit of different circumstances and inferences, the case is one for the determination of the jury and not for the court. Bender v. Railway, 137 Mo. 240; Coontz v. Railway, 121 Mo. 652; O'Mellia v. Railway, 115 Mo. 205; Roddy v. Railway, 104 Mo. 235; Nagel v. Railway, 75 Mo. 665. And when there is some evidence, although slight, to support the verdict, and notwithstanding the weight of the whole evidence is against the verdict, yet the reviewing court is not authorized to interfere, for it is for the trial court to say whether the verdict is the result of passion or prejudice. Coontz v. Railway, ante; Huth v. Dohle, ante. These reflections bring us to the inevitable conclusion that the trial court did not err in its action allowing the case to go to the jury.

III. The defendant further complains of the action of the court in giving the plaintiff's second instruction which declared to the jury that if it found "that the defendant maintained a reservoir or water-pit in its said plant covered with a plank platform or walk, and that the said reservoir or pit was so maintained full of hot and greasy water, and that the plaintiff did not know of said reservoir or pit containing said

hot and greasy water and could not have discovered it by the exercise of ordinary care, and that defendant, by and through its agent in charge of said plant, and controlling the operation thereof, directed the plaintiff to make repairs to the pump at a point which required plaintiff to go upon said plank platform or walk over said reservoir or pit, and that while so engaged in repairing said pump, without fault or negligence on his part, the plaintiff's left foot and leg broke through one of said planks over said reservoir or pit of water as aforesaid, and went into said hot water thereby scalding and burning plaintiff's left foot and leg, then you should find for the plaintiff." The second count of the petition alleged that the planks in the covering of the pit were very old and which defendant had negligently suffered to become rotted and unsafe so that they did not have sufficient strength to hold the weight of plaintiff, which facts were known to the defendant or could have been discovered by the exercise of ordinary care, but were unknown to plaintiff and could not have been discovered by the exercise or ordinary care; that defendant failed to inform plaintiff of the existence of the pit and of the rotten and unsafe condition of the planks in the cover and negligently ordered plaintiff to go upon said cover and assist in repairing said pump; and that while in performance of the work so ordered, without any fault on his part, his left foot broke through one of the planks of the said cover and went into the boiling water of the pit below, etc.

It is thus seen that the hypothesis of this instruction is by far too narrow in its scope in that it utterly ignores certain controverted facts constitutive of his cause of action, and without the finding of which there could be no recovery. Unless the defendant knew, or could by the exercise of ordinary care have discovered that the planks in the pit-cover were defective, if they were defective, and with such knowledge ordered the plaintiff to take his stand upon the cover to do certain work without warning him of the defect and the incidental danger,

there was no liability for the injury. Surely upon no principle of law was the plaintiff entitled to recover if, as his instruction declared, the defendant did no more than order the plaintiff to stand on the pit-cover and there perform certain work and that while doing so his left foot broke through a plank in such cover, and in consequence of which he was injured. The very pith of the plaintiff's case was that the defendant knew, or could have known by the exercise of ordinary care, that the planks on the pit-cover were defective and unsafe, and that with this knowledge he ordered the plaintiff to go upon the pit-cover, in consequence of which he was injured. This was a fact in issue which should have been submitted to the jury by the plaintiff's instruction.

It is not true, as is contended by the plaintiff, that by the allegations of the defendant's answer this fact stood admitted.

The answer alleges that the day before the accident a fellow-servant of the plaintiff let a heavy pipe fall on the cover of the pit thereby causing a diagonal split therein, and that a piece of the split plank was removed, leaving a hole in the cover which the plaintiff knew, etc. It needs no argument to show that such an answer did not supply the defect in the plaintiff's instruction. If the plaintiff sustained the relation of fellow-servant to the engineers, or if the engineers did not act in the capacity of vice-principals in the discharge of the duties of their employment, then their knowledge of the condition of the plank on the cover was not that of the defendant. Musick v. Packing Co., ante; Sullivan v. Railroad, 97 Mo. 113; Condon v. Railway, 78 Mo. 567; Hall v. Railway, 74 Mo. 298. It is thus seen that the admission of the answer was not that the defendant knew, or by the exercise of ordinary care could have known, that the planks on the cover of the pit were defective, and that with such knowledge ordered the plaintiff to go upon such cover in the performance of the work required of him. Nor do we discover anything in the defendant's instructions approving the theory of that of plain-

tiff. For these reasons we must condemn plaintiff's instruction.

The court might with propriety have sustained the motion filed by defendant at the conclusion of all the evidence requiring the plaintiff to elect upon which count of his petition he would go to the jury, but as we are unable to perceive that the action of the court in denying the motion resulted in any prejudice to the defendant, it can afford no ground for interference with the judgment.

If the plaintiff was entitled to recover, we can not, in view of the evidence relating to the nature and extent of the injury received, say that such recovery was excessive.

On account of the error in giving the plaintiff's second instruction, the judgment will be reversed and the cause remanded. All concur.

### ON MOTION FOR REHEARING.

ELLISON, J.—Each party has asked a rehearing in this cause. Defendant, in support of its criticism of the foregoing opinion by the presiding judge, says that, as to fellow-servants, it is in "direct conflict with the decision of the Supreme Court in the case of Grattis v. Railway, 153 Mo. 380." In view of such statement we have again looked into the controversy.

In cases other than railroads (these being dangerous agencies now excepted by statute) the master is not liable to a servant for injuries resulting from the negligence and carelessness of a fellow-servant. The difficulty in any given case, is to determine whether the person guilty of the negligence is a fellow-servant of the person injured, as that term is defined and applied in law. In cases of corporations, all servants are fellow-servants in the sense that they are in the employ of a common master. But are they fellow-servants in the sense of the term when it is used in fixing liability, or determining non-liability of the common master? Whenever an injury

happens by the negligent performance, or non-performance, of any of the master's duties (sometimes called personal or positive duties) to the servant, then the master is liable. And the fact that he has delegated that duty to one of his other servants, high or low, will not excuse him. For, the law is that the master's duties to the servant can not be laid aside by him, or put upon others in such way as to exculpate him when an injury happens by reason of their non-performance.

Where a corporation is the master, it necessarily must entrust this duty into the hands of servants. But these, while performing such duties, are not fellow-servants to other servants, in the sense of the law. And though the corporation has been as careful and painstaking as possible in selecting servants to perform its duties, yet if they should be guilty of a negligent act or omission, which hurts another servant, the corporation would be liable. For when it selects another to perform one of the personal duties which it owes to its servants, that other stands in its stead—is its *alter ego*.

If I may so express it, the *legal fact* is that the master is an absolute insurer of the servant's safety from any negligent act of his own; which, as I have just said, includes the act of him to whom he has delegated one of his positive duties. He does not insure the safety of the place to work, but he *does* insure that he will *not be negligent in his effort* to have it safe. The servant assumes the risk of the negligence of his fellow-servant, but never that of the master, or the master's deputy, in the performance of his positive duties. The servant's assumption of risk of his careless fellow-servant is contractual and is assumed on his part by his contract of service. But it would be against the policy of the law to allow the master to contract against his own negligence in this as well as in other well-recognized instances. It makes no difference how low down in the scale of employment a master may go to find a servant to deputize to perform for him a duty to the other

servants.    Whoever the master selects to act in his stead, becomes, as to that duty, the master himself.

What are the duties which a master owes to the servant? Primarily it is his duty to furnish the servant a reasonably safe place in which to work.    If the master negligently furnishes him an unsafe place, or negligently allows the place to become unsafe, and he is injured thereby, the master is liable.

The place in which the master set the plaintiff to work was the engine room.    It became an unsafe place in which to work by the combined reason of the pit of hot water and its insecure covering.    Did it become so by the defendant's negligence, or which is the same thing, the negligence of those to whom it had deputed the duty to keep the place safe for its employees?    Looking alone to the evidence in behalf of defendant itself, and this question must be answered in the affirmative.    That evidence was given by the defendant's superintendent.    He stated that there were two shifts (an engineer and fireman); that the engineer was in charge of the engine room and the fireman in charge of the boiler room where the accident happened to plaintiff.    That it was the duty of each shift to keep the place in repair during the period such shift was in charge.    That is, that while each engineer and fireman was in charge, they looked after the safety of the place.

The evident purpose in bringing out this evidence was to show that whatever became unsafe, became so by the act of these employees as fellow-servants, and plaintiff being one of them, he could not recover.    But, accepting the superintendent's testimony as true, it does not exculpate; it inculpates defendant.    He says that each shift looked after the safety of the place; that particularly the fireman kept oversight of the boiler room.    The other testimony, both for plaintiff and defendant, shows that this pit became unsafe, or at least became known to be unsafe, to the engineer and fireman preceding plaintiff and while he was off duty, and was

left by them in that condition without informing plaintiff. We have already said that the master can not put away the duty of keeping a safe place for his servant. It is therefore clear that if each shift looked to the safety of the place while on duty, they were deputized to perform defendant's duty, and their negligence was defendant's negligence.

As stated above, the defendant, to sustain the position that plaintiff's injury was due to the negligence of his fellow-servant, relies on Grattis v. Railway, 153 Mo. 380. But in so doing counsel disregard the warning given by Judge Marshall in that case (p. 403), and Judge Black in Parker v. Railway Co., 109 Mo. 407; for they are confounding the rule governing liability for the negligence of fellow-servants, with that governing the liability for the negligence of the master. The duty of the master to furnish a safe place to work, and to keep it safe, is a personal or positive duty to the servant which, as we have already said, he may for convenience delegate to other servants, but these are not fellow-servants in the performance of that duty; they are the *alter ego*, the vice-principal; that is, they *stand for and instead of the master himself*, so that case, instead of being an authority for defendant, is a warning that it must not be accepted as governing cases like defendant's. In this connection see quotation made by Judge Marshall from Judge Dillon (p. 407); as well as Railway v. Baugh, 149 U. S. 368, 386, and Railway v. Keegan, 160 U. S. 259, 264.

But among the many suggestions made by defendant is the following, which it claims is an exception to the rule we have stated, viz.: That when the master employs competent workmen and furnishes suitable material for a structure, and intrusts the duty of constructing it to the servants who are to work upon it, he is not liable to one of these servants for an injury resulting from negligence of one of the co-servants in building the structure. That exception has the sanction of authority. Bowen v. Railway, 95 Mo. 277; Jones v. Packet

Co., 43 Mo. App. 407; Kelley v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485; Armour v. Hahn, 111 U. S. 313; Peschel v. Railway, 62 Wis. 338.    But that exception is not applicable to the case made by the present record.    In this case the place in which the plaintiff was put to work and the machinery therein, were furnished by defendant, and plaintiff was introduced into the place without having had anything to do with its construction.    Under such facts there is no room for application of the exception to the rule referred to.    Bowen v. Railway, supra; Arkerson v. Dennison, 117 Mass. 407; Brabbitts v. Railway, 38 Wis. 289; Ford v. Railway, 110 Mass. 240; Holden v. Railway, 129 Mass. 268; Davis v. Railway, 55 Vermont 84; Hough v. Railway, 100 U. S. 213.

Manifestly it was the duty of some one to keep the place in controversy reasonably safe for each shift to work in as they came to work.    It was either the duty of the servant who discovered the insecurity of the place to report it to the superintendent so that he could repair it, or it was his duty to repair it himself.    The superintendent says the latter was the duty. That is the same as to say that the master's duty was delegated to him.    It may well be said that if the duty of the servant had been to report the necessity for repairs to the superintendent; or if he had attempted to repair when it was not his duty to do so, his negligence would have been that of a fellow-servant.    But the superintendent places these servants above that role.   His testimony clothed them with one of the master's duties, and neglect to perform such duty must be charged to the master.

Defendant has urged upon us a number of theories and reasons why it should not be held liable for the accident.    But the difficulty constantly in the way of allowing effect to any of them is that the negligence charged against the servant here relates to one of the *master's duties* which he can not shift onto the shoulders of an employee so as to escape respon-

sibility.   It is not a case falling within that vast variety of kinds of negligence of which servants are guilty in performing a servant's duty.   It is a case where the master has said to the servant:   "It is not convenient for me to be present and I will get you to perform one of my personal duties for me." If the defendant could escape liability in this case, it would be in the power of any master to evade his duty in every instance.

We' therefore conclude that defendant's objection to Judge SMITH's opinion is not well taken and, hence, overrule its motion.

On further consideration we have concluded that on the evidence in the record, the omission to include in respondent's instruction No. 2, the question of defendant's knowledge of the defective covering was not such error as would justify a reversal of the judgment.   The entire evidence, including that for defendant, shows that defendant's servants to whom it had delegated the duty to keep the place safe knew of the defect and of its being unsafe.   In such state of the evidence it was not reversible error to omit the hypothesis of defendant's knowledge.   Thus it has been uniformly held that it is not reversible error to assume that as a fact which was conceded at the trial, or which was established by uncontradicted and uncontroverted evidence.   Sweeney v. Railway, 150 Mo. 385; Ragan v. Railway, 144 Mo. 623; Pratt v. Conway, 148 Mo. 291; Fullerton v. Fordyce, 144 Mo. 519; Dimmitt v. Railway, 40 Mo. App. 654; Tyler v. Tyler, 78 Mo. App. 240; Price v. Patrons Co., 77 Mo. App. 236.

The motion for rehearing by plaintiff will be sustained and the judgment ordered affirmed.   The other judges concur.