BRIMER, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 24, 1905.

1. **MASTER AND SERVANT: Safe Place to Work: Negligence.** The plaintiff, an employee of the defendant railroad company, was put to work unloading dirt from flat cars which were guarded on the sides by loose planks held in place by standards. When an empty car was returning for a load, the planks were placed securely in forks at the top of the standards, affording a convenient means by which the men could steady themselves while standing on the running car. The plaintiff was ordered to a car equipped as the rest, except that the standard at one end of the car was without a fork, a fact unknown to the workman, but known to the foreman, and while steadying himself against the plank, resting upon the smooth top of the forkless standard, the plank slipped, throwing plaintiff from the car and causing the injuries for which he sued. *Held*, while the planks were primarily for retaining the dirt, they were suitable for use of the men in steadying themselves and the defendant was guilty of negligence in furnishing an unsafe place for the plaintiff to work .

2. ——: ——: ——: **Assumption of Risk.** The plaintiff did not assume the risk of injury in using the plank to support himself on the theory that he used it for a purpose different from the one for which it was designed.

3. ——: ——: ——: ——: **Contributory Negligence.** Whether the plaintiff was guilty of contributory negligence in failing to observe the plank was insecure, was a question for the jury.

Appeal from Pike Circuit Court.—*Hon. David H. Eby, Judge.*

AFFIRMED.

*H. H. Trimble, Palmer Trimble,* and *Matson &
May* for appellant.

(1)   It is not negligence on the part of defendant
to supply a car with the standards and boards as de-
scribed in the petition and evidence, to be used for the
purpose shown by the evidence.   Defendant could not
have anticipated   that plaintiff or any other would
undertake to use the board spoken of in the pleadings
and evidence to lean upon or ride on.   Brewing Co. v.
Talbot, 141 Mo. 676, 42 S. W. 679; Hicks v. Railroad,
6 Mo. App. 304; Ray on Negligence of Imposed Duties,
134; Webb's Pollock on Torts (Am. Ed.), 46; Hart v.
Railway, 7 N. W. 9; Ochiltree v. Railway, 62 N. W. 7;
Ochiltree v. Railway, 63 N. W. 322, 64 N. W. 788.   (2)
Defendant's instruction, in the nature of a demurrer
to the evidence, requested at the close of plaintiff's evi-
dence, should have been given for the reason that plain-
tiff voluntarily, and without necessity, by his own con-
fession, put himself in a place of danger.   Richardson
v. Mesker, 171 Mo. 666, 72 S. W. 506; York v. Railroad,
117 Mo. 412, 22 S. W. 1081; Hudson v. Railroad, 101
Mo. 13, 14 S. W. 15; Holloran v. I. & F. Co., 133 Mo.
470, 35 S. W. 260; Sparks v. Railroad, 31 Mo. App.
111; George v. Mfg. Co., 159 Mo. 340, 59 S. W. 1097;
O'Neill v. Railroad, 45 Iowa 546; Jones v. Railroad,
95 U. S. 439; Robertson v. Railroad, 22 Barb. 91; Mar-
tin v. Railroad, 41 Fed. 125; Martenson v. Railroad, 11
A. & E. R. R. Cases 233.   Brimer undertook to use the
appliances described in the pleadings and evidence for
a purpose for which they were not intended, and hence
assumed the risk of injury.   Henry v. Railroad, 76 Mo.
295; Friel v. Railroad, 115 Mo. 503, 22 S. W. 498.   (3)
Brimer was guilty of contributory negligence.   He
undertook to support himself on this loose board while
the train was in motion, knowing that it was designed
to hold dirt on the car, and for no other purpose, and
did so without looking to see if it was safe.   Doerr v.

Brewing Co., 176 Mo. 556, 75 S. W. 600; Steinhouser v. Sprawl, 120 Mo. 541; Ring v. Railroad, 112 Mo. 230, 20 S. W. 436; Aldridge, Admr., v. Furnace Co., 78 Mo. 559; Marshall v. Hay Press Co., 66 Mo. App. 256.

*Ball & Sparrow* for respondent.

It was the duty of appellant to have used ordinary care and prudence in furnishing to respondent, at the time of his injury, a reasonably safe place in which to work, and a reasonably safe appliance with which to work, and to have used all reasonable precaution to maintain and keep such place and appliances in a reasonably safe condition. Zellars v. Water & Light Co., 92 Mo. App. 117; Herdler v. Range Co., 136 Mo. 3, 37 S. W. 115; Doyle v. Trust Co., 140 Mo. 15, 41 S. W. 255.

GOODE, J.—This plaintiff was hurt by falling from a flat car in one of the defendant's construction trains. The train was composed of nine flat cars used for hauling dirt. Five of the cars had four loose planks which were placed on their edges along the sides of the car to prevent the dirt from escaping. The cars had standards on either side about three feet high with forked tops. When dirt was to be unloaded the boards were raised into the forks of the standards and they then extended from one fork to the other, and so remained until the car was to be reloaded with dirt. There were four standards on each side of a car, one near each end and the other two between. The planks were about twelve inches wide and sixteen feet long. The forks were twelve inches deep. On December 4, 1903, plaintiff worked on a car equipped with standards and planks of the kind above described. The next day he began to work on the same car, but later in the day was ordered by the foreman to work on another car next to the one he had first worked on. The train was loaded with dirt that morning, hauled to the place

where the dirt was needed and there unloaded, the retaining planks being raised and laid in the forks during the unloading of the car. The car on which the plaintiff last worked had standards of the ordinary kind with forks at the top, except one standard at one corner, which had no fork; hence, one end of one of the planks rested on the top of that standard, a flat surface four inches square, instead of in a fork. The plaintiff was ignorant of this fact, never having worked on that car before, nor observed that this particular standard was unlike the others in having no fork. After the train was unloaded, it started back to the spot whence dirt was taken, running at a speed of about twenty-five miles an hour. The day was chilly and the plaintiff stood with his back to the wind and to the forkless standard. While the train was in motion the plaintiff, in order to steady himself, put his hand against the plank which had one end in a fork and one end on the top of said standard. When he did so the loose end of the plank slipped off its resting place, throwing the plaintiff from the car, breaking his arm and otherwise hurting him. It was shown that none of the workmen on the car knew of the absence of the fork on the top of the standard until plaintiff had been injured; but the foreman of the crew had known it for several days. It was also shown that the workmen were in the habit of steadying themselves while the train was in motion by putting their hands on the boards and standards. There was a verdict and judgment for the plaintiff and defendant appealed.

The main propositions invoked here are that defendant was not guilty of negligence, inasmuch as the boards and standards were suitable for use as they were intended to be used, to-wit; retaining the dirt on the car; that in attempting to use them for another purpose, plaintiff assumed the incident risk, and that he was guilty of contributory negligence in not looking to see if both ends of the board rested in forks before

he put his hand against it. We must decline to accept either of those propositions. They may be considered together as they are based on the theory that the planks and standards were intended only to keep the carload of dirt in place, and being reasonably safe for that purpose, the defendant's whole duty was discharged. No doubt the primary purpose in supplying the car with standards and planks was to retain the dirt; but the railroad company was bound to use care to provide its workmen a reasonably safe place to work, and the evidence shown beyond doubt that this duty was disregarded. When laid in the forks of the standards, as they were in every instance except one, the planks afforded so convenient a means of steadying the standing workmen as the train moved along, that the men would inevitably put their hands against them to resist the jolting of the train. This was habitually done, according to the evidence and should have been anticipated by the company, not only as a customary, but as a perfectly natural act. Now in leaving an end of one plank loose on the smooth top of a standard, while all the other planks securely rested in forks twelve inches deep, the defendant furnished the plaintiff and his coworkmen an unsafe place to work; for the crew properly may be said to have worked in travelling to and fro between the loading and unloading places. At any rate they were in the line of duty. As ordinarily the boards rested in the forks when the train was in motion, and thereby afforded the men a means of supporting themselves and a protection against being jolted from the train or jostled about, it was negligence not to have the boards lodged so they could not slip under pressure of the hand. [Palmer v. Telephone Co., 91 Mo. App. 106; Zellars v. Light Co., 92 Mo. App. 107.] To leave one of the planks resting on the smooth top of a standard was certain to lead to a casualty. This ruling disposes of the contention that plaintiff assumed

the risk of injury in using the plank to support himself, which was founded on the idea that he used it for a different purpose from the one it was designed for. Besides being obviously convenient as a support for the standing workmen, they were constantly availed of for that purpose with the defendant's knowledge and consent.

As to the contributory negligence of the plaintiff, the argument is that he should have looked to see that both ends of the board rested in forks before he put his hand against it, and, failing to look at the loose end, was guilty of negligence as a matter of law. Plaintiff ought to have taken ordinary precautions for his own safety; but we decline to say he was so flagrantly careless in not observing the end of the plank behind him that he ought to be nonsuited. He had no reason to think that end was more insecure than the other, or than the other planks on the train were. If a man of ordinary prudence would have thought of such a danger and looked for it, then it was incumbent on the plaintiff to do so. We see no evidence of contributory negligence on the plaintiff's part. At most, the question was for the jury. The judgment is affirmed. All concur.

St. Louis Court of Appeals, January 24, 1905.